**Herbert UNDERWOOD Appellant (Defendant below),**

v.

**STATE of Indiana Appellee (Plaintiff below).**

No. 49S00–9707–CR–419.

Supreme Court of Indiana.

Jan. 31, 2000.

---

Ann M. Pfarr, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Herbert Underwood was sentenced to death for murder and related crimes but granted a new trial. After a retrial resulted in acquittal on some counts and a hung jury on murder, he was convicted at a third trial and sentenced to 60 years. He now appeals, claiming a speedy trial right violation and improper use of certain evidence. We affirm, finding no speedy trial right violation and any error in admitting the evidence to be harmless.

This Court has jurisdiction over this direct appeal because the sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

### Background

The facts most favorable to the verdict are as follows. On the evening of June 4, 1984, Defendant Herbert Underwood, Rick Asbury, Rick Huffman, and Kerry Golden were riding in Huffman's car after a night at a local bar. Earlier that night, Golden was seen carrying a roll of money and marijuana. The group had traveled for awhile when Huffman stopped the car and Defendant ordered everyone to get out. Huffman testified that Defendant said that he wanted to "slap [Golden] around a little bit and take his money and dope." Defendant grabbed Golden's leg and dragged him out of the car. After Defendant and Huffman severely kicked and bludgeoned Golden, Defendant told Golden to give up the "pot." Defendant then removed Golden's clothes and took his marijuana and money roll from his pockets. All the while, Asbury and Huffman stood nearby. At one point, Defendant grabbed Golden's penis and lifted him off the ground.

Shortly thereafter, Huffman removed a tire iron from the trunk of his car, and Asbury watched as Defendant and Huffman beat Golden with the iron. Asbury also hit Golden with the iron, but he testified that Golden was already dead at that time. The three got inside the car and drove away. Golden died from blunt-force injuries to the head, chest, and abdomen.

On July 17, 1985, Defendant was tried for the murder of Golden. The jury convicted Defendant of Robbery,[1] Conspiracy to Commit Robbery,[2] Conspiracy to Commit Murder,[3] Murder,[4] and Felony Murder.[5] The trial court followed the jury's recommendation and sentenced Defendant to death. On March 10, 1989, this Court affirmed the trial court judgment as to Defendant's convictions and sentence of death. See Underwood v. State, 535 N.E.2d 507 (Ind.), cert. denied, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 206 (1989).

1. Ind.Code § 35–42–5–1 (Supp.1984).

2. Id. §§ 35–42–5–1 (1983) and 35–41–5–2.

3. Id. §§ 35–42–1–1(1) and 35–41–5–2.

4. Id. § 35–42–1–1(1).

5. Id. § 35–42–1–1(2).

On April 21, 1995, a post-conviction court granted Defendant's motion for summary judgment for post-conviction relief, vacated Defendant's convictions, and ordered a new trial. On June 20, 1995, Defendant, acting *pro se*, filed a "motion for a fast and speedy trial." (R. at 25–26.) On July 5, 1995, the trial court appointed new counsel to represent Defendant and set a retrial date for August 14, 1995 (a date within the prescribed 70 days of Ind. Crim. Rule 4(B)). On July 28, 1995, defense counsel explained at a pre-hearing conference, over what Defendant claims was his objection,[6] that he would not be adequately prepared for trial on August 14, 1995. The court stated that Defendant's right to counsel was more fundamental than the right to a speedy trial and rescheduled Defendant's retrial for March 18, 1996.

On February 23, 1996, Defendant, again acting *pro se* but still represented by counsel, filed a "motion to dismiss all charges" on grounds that his right to speedy trial had been violated. On February 28, 1996, defense counsel filed a motion for continuance on grounds that he had to prepare and try other capital cases. The court granted counsel's request. On March 1, 1996, Defendant submitted a written letter to the court, reiterating his right to a speedy trial. On April 19, 1996, defense counsel filed a memorandum of law requesting a continuance of retrial on grounds that it was necessary for effective assistance of counsel. On April 26, 1996, the court denied Defendant's February 23 motion to dismiss. On June 13, 1996, Defendant, by defense counsel, filed another motion to continue retrial, or in the alternative, a motion to exclude the testimony of Huffman, the co-defendant in Defendant's first trial. On June 14, 1996, the court rescheduled the trial for a second time, setting the retrial date for August 19, 1996.

On August 19, 1996, Defendant was retried and acquitted on the charges of Robbery, Conspiracy to Commit Robbery, and Felony Murder. However, the jury was unable to reach a verdict on the Murder and Conspiracy to Commit Murder charges. After the end of the first retrial, the State withdrew the death penalty charge. On February 7, 1997, a second retrial began and a jury found Defendant guilty of Murder and Conspiracy to Commit Murder.

On February 22, 1997, at Defendant's sentencing hearing, the trial court vacated Defendant's Conspiracy to Commit Murder conviction. The trial court then sentenced Defendant to 60 years in prison for the murder of Golden. Defendant's murder conviction and sentence are the sole basis for this direct appeal.

## Discussion

### I

Defendant contends that the trial court violated his statutory right to a speedy trial under Indiana Criminal Rule 4(B) when it failed to retry him within 70 days of June 20, 1995, the date that Defendant filed a *pro se* motion for a speedy trial.

Ind.Crim. Rule 4(B) provides that "[i]f any *defendant held in jail on an indictment* or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion...." Crim. R. 4(B) contains two exceptions whereby a defendant is not entitled to discharge even though the prosecutor or the court fails to bring the defendant to trial within 70 days: (1) the court's calendar is too congested to adjudicate the defendant's case during that time; or (2) the defendant causes the delay. *Poore v. State*, 685 N.E.2d 36, 41 (Ind.1997).

However, Defendant directs us to the record which does not appear to contain any such objection.

---

**6.** Defendant states in his brief that defense counsel moved for continuance "despite [Defendant's] objection." Appellant's Br. at 13.

■ This Court has held that Crim. R. 4(B)(1) applies to retrials so long as the defendant asserts a speedy trial request after the retrial has been ordered. *See James v. State,* 716 N.E.2d 935, 938 (Ind. 1999) (citing *Poore,* 685 N.E.2d at 41; *Young v. State,* 482 N.E.2d 246, 249 (Ind. 1985)).

■ Neither the parties nor the record[7] indicate that the "court congestion" exception to Crim. R. 4(B) explained the delay of the retrial. With regard to the other exception, the crucial question is whether Defendant caused the delay preventing him from discharge. Defendant concedes that defense counsel moved for a continuance resulting in the court rescheduling the retrial from August 14, 1995, to March 18, 1996. However, Defendant maintains that because defense counsel moved for continuance "despite [his] objection," he is still entitled to discharge under Crim. R. 4(B). In response, the State argues, and we agree, that Defendant moved for several continuances resulting in delays, and therefore, Defendant is not entitled to discharge.

■ In the present case, the trial court was required to appoint new counsel for Defendant after he was granted post-conviction relief. It may be that Defendant sought a speedy trial on a *pro se* basis prior to counsel's appointment and objected to counsel's request for a continuance. But once counsel was appointed, Defendant spoke to the court through counsel. The trial court was not required to respond to Defendant's request or objection.

*See Broome v. State,* 687 N.E.2d 590, 594 (Ind.Ct.App.1997) (citing *Kindred v. State,* 521 N.E.2d 320, 325 (Ind.1988); *Bradberry v. State,* 266 Ind. 530, 537, 364 N.E.2d 1183, 1187 (1977)), *summarily affirmed in relevant part,* 694 N.E.2d 280 (Ind.1998). To require the trial court to respond to both Defendant and counsel would effectively create a hybrid representation to which Defendant is not entitled. *Id.; cf. Sherwood v. State,* 717 N.E.2d 131, 134–37 (Ind.1999) (holding that the trial court may not require hybrid representation where a defendant makes a proper request to proceed *pro se* ).[8]

■ To the extent that Defendant claims that counsel's motion for continuance should have been denied, we find no error. Newly-assigned counsel explained to the court that he needed more time to prepare adequately for a murder trial in which the State sought the death penalty. *See* Ind.Crim. Rule 24(B).[9] To represent Defendant effectively, defense counsel had to familiarize himself with the complexities of this case—a capital murder case in which Defendant had already once been sentenced to death—and develop a trial strategy. The trial court has the prerogative, particularly in a murder case, to assess the complexities of the situation and evaluate the necessity to delay the trial. *See Roseborough v. State,* 625 N.E.2d 1223, 1225 (Ind.1993) (holding no violation of Crim. R. 4(B) where the trial judge extended the trial date after newly-appointed counsel explained that he needed further time to prepare a murder case); *see also McGowan v. State,* 599 N.E.2d 589, 592 (Ind.1992) (ruling that no violation

---

7. The pre-trial hearing regarding the extension of Defendant's trial was not included in the record.

8. Defendant made no proper request to defend himself *pro se* in this case.

9. Quality representation by appointed counsel is mandatory under Crim. R. 24 which provides in pertinent part:

(B)(3) Workload of Appointed Counsel. In the appointment of counsel, the nature and volume of the workload of appointed counsel must be considered to assure that

counsel can direct sufficient attention to the defense of a capital case.

(a) *Attorneys accepting appointments pursuant to this rule shall provide each client with quality representation in accordance with constitutional and professional standards.* Appointed counsel shall not accept workloads which, by reason of their excessive size, interfere with the rendering of quality representation or lead to the breach of professional obligations.

(emphasis added).

of Crim. R. 4(B) occurred even though the defendant personally objected to a trial continuance because it was within the trial judge's discretion to decide that newly-appointed counsel required more time to adequately prepare). There was no error in the exercise of that prerogative here.

## II

Defendant also claims that the trial court erroneously denied his motion *in limine* to exclude evidence of the robbery of which Defendant had been acquitted. Specifically, Defendant argues that because the jury acquitted him of robbery in his first retrial, use of this evidence in his second retrial was precluded by the collateral estoppel principle embodied in the Double Jeopardy Clause. U.S. Const. amend. V. Defendant therefore asks us to reverse his murder conviction.

At the first retrial in the present case, the State offered evidence that Defendant led Golden into a secluded area, forcibly robbed him of his money and marijuana, and then shared the proceeds with Asbury and Huffman. Based on these facts, the State charged Defendant with Robbery and Conspiracy to Commit Robbery. A jury trial resulted in acquittal of both robbery charges; however, a mistrial was declared for the charges of Murder and Conspiracy to Commit Murder. Before the second retrial, defense counsel filed a motion *in limine* to suppress the evidence relating to the alleged robbery. The court denied the motion. At the second retrial, the jury found Defendant guilty of Murder and Conspiracy to Commit Murder.

In *Little v. State,* this Court adopted the doctrine of collateral estoppel as an analytical basis for determining the admissibility of evidence of former offenses for which a defendant has been acquitted. 501 N.E.2d 412, 415 (Ind.1986). The concept of collateral estoppel "means simply that when an issue of material fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 414 (quoting *Ashe*

*v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)). To determine whether evidence relating to an acquitted offense should be admitted, the trial court must (1) determine what facts were necessarily decided in the first trial by examining prior proceedings and considering the pleadings, evidence, the charge and other relevant matters; and (2) decide whether the government in a subsequent trial attempted to relitigate facts necessarily established against it in the first trial. If so, evidence of the former offense must be suppressed. *Little,* 501 N.E.2d at 415.

We hold that if the use of the facts presented in the first retrial in which Defendant was acquitted was error at all, the error was harmless. To find an error harmless when a violation of a constitutional right is claimed, this Court must be sufficiently confident to declare the error harmless beyond a reasonable doubt. *See Harden v. State,* 576 N.E.2d 590, 593 (Ind. 1991); *see also Williams v. State,* 715 N.E.2d 843, 847 (Ind.1999) (recognizing that some constitutional errors do not require a new trial if the error was "'harmless beyond a reasonable doubt'" (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967))).

Without considering the references made regarding the robbery of Golden, the evidence presented to the jury in this case was overwhelming. Two State witnesses, Huffman and Asbury, testified that they saw Defendant severely kick and beat the victim to death with an iron tool. In fact, Huffman's testimony revealed that "[Defendant] had picked [Golden] up by his penis and was trying to carry him [and] drag him back towards the car...." (R. at 904.) Asbury testified that Defendant said that the three of them had to kill Golden because he could identify them as the perpetrators who beat him.

Asbury further testified that after they killed Golden, the three stopped at a gas station to fix the muffler on Huffman's car and Defendant washed his bloody T–Shirt in the restroom. The gas station attend-

ant testified that on the night of the murder, he observed a car with a loose muffler pull into the gas station. The attendant further testified that shortly after he and Defendant exchanged a few words, he went to the restroom and discovered bloody water and towels. The attendant made an in-court identification that Defendant was the person who he spoke to at the gas station.

In light of this overwhelming evidence of guilt, we are confident that, to the extent that the trial court improperly denied the motion *in limine,* any claimed error was harmless beyond a reasonable doubt. *See, e.g., Kuchel v. State,* 570 N.E.2d 910, 915–17 (Ind.1991) (holding that although the trial court erroneously admitted evidence of other crimes for which the defendant had been acquitted, admission of such evidence constituted harmless error).

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.