**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES DAVIS, SR, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No.  03A05-1111-CR-582 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE BARTHOLOMEW SUPERIOR COURT
The Honorable Chris D. Monroe, Judge
Cause No.  03D01-1007-FB-870

**September 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

Charles Davis, Sr. ("Davis") appeals his conviction for dealing in methamphetamine as a class B felony.[1]

We affirm.

ISSUES

1.    Whether Davis was entitled to a discharge pursuant to Indiana Criminal Rule 4(B).

2.    Whether the trial court abused its discretion in admitting evidence.

3.    Whether there is sufficient evidence to support Davis's conviction for dealing in methamphetamine.

FACTS

During the evening of March 21, 2010, Gerald Cain ("Cain") was watching television at his Columbus home when a van struck a fire hydrant and came to a stop in front of Cain's residence.  When Cain went outside, he saw a woman sitting in the front passenger seat. Davis then exited the van and claimed that he had been talking on his cell phone when he drove off the road.  While waiting for the police to arrive, Cain noticed that Davis kept "walking back and forth, from the driver's door to the back of the van and then, back," (Tr. 284), and appeared to be "moving stuff from probably behind his seat to the back of the van[.]"  (Tr. 287).

Patrol Officer William Young ("Officer Young") of the Columbus Police Department

---

[1] Ind. Code § 35-48-4-1.1.

responded to the scene. Officer Young became suspicious because Cain "was talking real fast, [which] made [Officer Young] feel that [Davis] was kind of nervous, and how [Davis] kept bringing up, and wanting to get the vehicle out of there[.]" (Tr. 294). Officer Young then spoke with Cain, who reported that Davis had appeared to be "messing with something in the back of the van." (Tr. 295).

Officer Young then looked in the van's windows and saw a red tool box; "some bags"; and a "white five gallon bucket," the lid of which had "a little spout coming out of . . . it, like you would connect some type of tubing to it." (Tr. 296). As Officer Young approached the back of the van, he noticed "a slight odor of some kind of chemical, solvent type smell" emanating from the van. (Tr. 296).

After receiving Davis's permission to search the van, Officer Young opened the passenger-side sliding door, whereupon he "got a stronger odor of . . . a chemical smell." (Tr. 297). Officer Young observed a large propane-type tank; a canning jar; a pitcher with some white residue in it; a spatula, also with "some kind of white residue in it," (Tr. 297); and a red bottle, containing "liquid fire," inside the van. (Tr. 298). Based on his experience, Officer Young knew these were items commonly used to manufacture methamphetamine. Officer Young informed Davis that he was going to detain him, and as Officer Young led him to the patrol vehicle, Davis stated that "all the stuff in there [wa]s [his]" and that the passenger "ha[d] no knowledge of what [wa]s in that vehicle." (Tr. 305).

Once Officer Young's supervisor arrived on the scene, Officer Young read Davis his *Miranda* rights, after which Davis indicated that he was willing to talk to Officer Young.

3

Davis admitted that there was methamphetamine in the vehicle and although "there was nothing cooking," he stated "that there was something in there in a jar that all you had to do was cook it off and it was actual product, meth" and "that there was another thing in there containing the bones of, the process of cooking meth." (Tr. 306). Officer Young recorded Davis's statement.

A pat-down of Davis revealed a glass pipe in his shirt pocket. The pipe was burned on one end and had residue in it. Davis then told the officers that there were "two more of those in the vehicle above the visor." (Tr. 312). Officer Young subsequently recovered the two pipes from above the visor. A search of the vehicle revealed a ledger, on which was written a list of items commonly "use[d] to manufacture methamphetamine," (Tr. 401), and measurements typically used to determine "how much methamphetamine" will be manufactured from known amounts of ephedrine. (Tr. 402).

Officers also recovered a coffee filter, which field-tested positive for the presence of methamphetamine, from under the driver's seat. Laboratory tests later confirmed the presence of methamphetamine in the coffee filter and in liquid taken from the pitcher. On July 12, 2010, the State charged Davis with Count 1, dealing in methamphetamine as a class B felony; and Count 2, possession of drug precursors as a class D felony, under Cause Number 03D01-1007-FB-870 ("Cause No. 870"). On March 8, 2011, Davis filed a motion to suppress the contents of his vehicle. The trial court set the hearing on the motion to suppress for April 6, 2011.

On March 9, 2011, Davis, by counsel, filed a motion for speedy trial pursuant to

4

Indiana Criminal Rule 4(B), which provides, in part, that a defendant "shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion . . . ." Thus, the State had until May 18, 2011, to bring Davis to trial. The trial court set the trial for May 10, 2011.

On April 6, 2011, Davis, by counsel, sought to continue both the hearing on the motion to suppress and the trial. The trial court reset the trial for September 6, 2011, but ordered Davis to file a written motion to reset the hearing on the motion to suppress. On April 25, 2011, Davis's counsel filed a motion to reset the hearing on the motion to suppress and a motion for speedy trial. The trial court therefore set the trial for June 28, 2011, the same date as Davis's trial under cause number 03D01-1101-FB-520 ("Cause No. 520"). Following a hearing, the trial court denied Davis's motion to suppress on June 3, 2011.

The trial court did not hold Davis's trial in Cause No. 870 on June 28, 2011. On July 26, 2011, however, the trial court entered an order, rescheduling the trial for September 6, 2011, "due to congested Court calendar, specifically the jury trial" in Cause No. 520. (App. 122). Davis did not object to the continuance. Subsequently, the trial court commenced a two-day jury trial on September 6, 2011, after which the jury found Davis guilty as charged.

The trial court held a sentencing hearing on October 18, 2011. For purposes of sentencing, the trial court merged Count 2 with Count 1 and sentenced Davis to an executed sentence of eighteen (18) years in the Department of Correction.

DECISION

1. <u>Discharge</u>

5

Davis asserts that his "right to a speedy trial was violated by the trial court" when the trial court continued the June 28, 2011 trial date to September 6, 2011. Davis's Br. at 10. "In reviewing Criminal Rule 4 appeals, we employ two standards of review: we review the trial court's legal conclusions de novo but exercise deference with respect to its factual findings." *Otte v. State*, 967 N.E.2d 540, 545 (Ind. Ct. App. 2012) *trans. denied*.

The Sixth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution guarantee the right to a speedy trial. *Cundiff v. State*, 967 N.E.2d 1026, 1027 (Ind. 2012). At issue here is the right to a speedy trial pursuant to Indiana Criminal Rule 4(B)(1), which provides as follows:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.

When the trial court schedules a trial date beyond the time limit prescribed by Criminal Rule 4(B)(1), the defendant must object at the earliest opportunity. *Fletcher v. State*, 959 N.E.2d 922, 925 (Ind. Ct. App. 2012), *trans. granted and opinion vacated*, 964 N.E.2d 233 (Ind. 2012), *vacated*, 968 N.E.2d 786 (Ind. 2012), *and opinion reinstated*, 968 N.E.2d 786 (Ind. 2012). This requirement enables the trial court to set the trial within the

6

prescribed time limit. *Id*. "'A defendant who permits the court, without objection, to set a trial date outside the 70–day limit is considered to have waived any speedy trial request.'" *Id*. (quoting *Stephenson v. State,* 742 N.E.2d 463, 488 (Ind. 2001), *cert. denied*).

Here, Davis did not object when the trial court reset his trial for September 6, 2011. Davis therefore has waived his claim that the trial court violated his right to a speedy trial.[2] *See Wilkins v. State*, 901 N.E.2d 535, 537 (Ind. Ct. App. 2009) (holding that the defendant "acquiesced to the trial setting outside of the seventy-day requirements and thereby abandoned his request for an early trial" where he failed to object to a trial set beyond the seventy-day time period), *trans. denied*; *see also Parker v. State*, 965 N.E.2d 50, 52 (Ind. Ct. App. 2012) (reiterating that a defendant waives review of a speedy trial request on appeal if he does not move for discharge or dismissal prior to trial).

Waiver notwithstanding, Davis's claim must fail as the trial court delayed his trial due to court congestion. A trial court's finding of congestion need not be contemporaneously explained or documented by the trial court. *Clark v. State*, 659 N.E.2d 548, 552 (Ind. 1995). Furthermore, we presume a trial court's finding of congestion to be valid. *Wilkins*, 901 N.E.2d at 537.

> A defendant challenging that finding must demonstrate that, at the time it was made, the finding was factually or legally inaccurate. The trial court's explanations are accorded reasonable deference, and this court will not grant

---

[2] Davis also argues that he "attempted to call attention to the speedy trial issue in his letter file-stamped April 26, 2011, in which he said he never meant to waive speedy trial under Criminal Rule 4 when his then-counsel sought continuance of the May trial date previously set." Davis's Br. at 10. We note, however, that once counsel is appointed, a defendant speaks to the trial court through his counsel. *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000), *reh'g denied*. Thus, the trial court was not required to respond to Davis's *pro se* objection.

relief unless a defendant establishes that the finding of congestion was clearly erroneous. The reasonableness of the trial court's finding of congestion is judged within the context of the particular circumstances of the case. A number of circumstances, including the unavailability of counsel, may result in congestion of the court calendar.

*Id*. (citations omitted).

The record shows that both the trial under Cause No. 870 and Davis's trial under Cause No. 520 were set for June 28, 2011. Subsequently, the trial court found that congestion due to the trials being set on the same date necessitated continuing Davis's trial in this case to September 6, 2011. The trial court then reduced the continuance to an order, as required by Criminal Rule 4(B), on July 26, 2011. Given the circumstances, we cannot say that the trial court erred in continuing Davis's trial due to court congestion.

2. Admission of Evidence

Davis asserts that the trial court abused its discretion in admitting evidence seized from his vehicle.

We note that the admission or exclusion of evidence is within the sound discretion of the trial court, and we will reverse the trial court's determination only for an abuse of that discretion. An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the appellant's favor.

*Redding v. State*, 844 N.E.2d 1067, 1069 (Ind. Ct. App. 2006) (citations omitted), *reh'g denied*.

Davis contends that search of his van violated his rights under the Fourth Amendment

8

of the United States Constitution.[3]

> The Fourth Amendment protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment. The fundamental purpose of the Fourth Amendment to the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings. For a search to be reasonable under the Fourth Amendment, a warrant is required unless an exception to the warrant requirement applies. The State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement.

*Taylor v. State*, 842 N.E.2d 327, 330-331 (Ind. 2006) (citations omitted). One such exception to the warrant requirement occurs when consent is given to the search. *Sellmer v. State*, 842 N.E.2d 358, 362 (Ind. 2006). "The state has the burden of proving 'that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied.'" *Campos v. State*, 885 N.E.2d 590, 600 (Ind. 2008 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973)). Whether consent was voluntarily given is a question of fact to be determined from all the circumstances. *Id.*

Here, Officer Young testified that Davis consented to a search of the vehicle. Specifically, Officer Young testified that after speaking with Cain, he approached Davis, who was standing next to the vehicle, and asked Davis whether he "care[d] if [he] search[ed] the vehicle," to which Davis replied, "nah, go ahead." (Tr. 296). Given these facts, we cannot say that Officer Young's search of Davis's vehicle was unreasonable.[4]

---

[3] Davis makes no claim that the search of his vehicle violated Article 1, section 11 of the Indiana Constitution.

[4] We note that Davis claims that, during the hearing on Davis's motion to suppress, Officer Young testified that Davis "made the statement to him as Davis was being walked to the officer's patrol car" and "was hand cuffed and then placed in the back of the vehicle." Davis's Br. at 8. Given this statement of facts, it seems that

3. Sufficiency of the Evidence

Davis asserts that the evidence is insufficient to support his conviction for dealing in methamphetamine, where the State charged that on or about March 21, 2010, he "did knowingly manufacture methamphetamine." (App. 13).

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (quotations and citations omitted).

Davis argues that the evidence does not establish that he manufactured methamphetamine as no one saw him "cooking" methamphetamine or "testified to having seen [him] mix any chemicals or otherwise manufacture methamphetamine." Davis's Br. at 12. The relevant portion of Indiana Code § 35-48-4-1.1 provides as follows:

---

Davis is asserting that the search of his vehicle violated his rights under Article 1, Section 11 of the Indiana Constitution, which requires that a person in custody explicitly waive the right to counsel before giving a valid consent to search. *See Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975). Davis, however, fails to make a cogent argument. Thus, he has waived this issue. *See Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005) ("A party waives an issue where the party fails to develop a cogent argument . . . ."), *trans. denied*. Waiver notwithstanding, Davis misconstrues the evidence. During the suppression hearing, Officer Young testified that he placed Davis in handcuffs after he opened the vehicle's door and observed the paraphernalia. (*See* tr. 111). Furthermore, the trial court specifically noted that the video made prior to Davis's arrest "showed that Mr. Davis was walking around . . . even while the officer is looking into the van. It also appeared that Mr. Davis may have been attempting to call someone. . . . [Officer Young] then placed the handcuffs on Mr. Davis . . . ." (Tr. 121-22) (emphasis added).

10

(a) A person who:
(1) knowingly or intentionally:
    (A) manufactures;
    (B) finances the manufacture of;
    (C) delivers; or
    (D) finances the delivery of;
    methamphetamine, pure or adulterated;

. . . .

commits dealing in methamphetamine, a Class B felony.

"Manufacture" is defined, in part, as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance . . . ." I.C. § 35-48-1-18. Here, the evidence shows that Davis possessed methamphetamine as well as several precursors. The evidence further shows that Davis was in the process of manufacturing methamphetamine, admitting that "there was something in [the van] in a jar that all you had to do was cook it off and it was actual product, meth," and "that there was another thing in there containing the bones of, the process of cooking meth."[5] (Tr. 306). Given the evidence, the jury could reasonably infer that Davis committed dealing in methamphetamine by manufacturing methamphetamine.

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.

---

[5] In his reply brief, Davis argues that he sought to suppress any statements he made at t[h]at time in his Motion to Suppress . . . ." Davis's Reply Br. 5. Issues raised for the first time in a reply brief are waived. *French v. State*, 778 N.E.2d 816, 826 (Ind. 2002).