

**FILED**

May 12 2023, 8:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer L. Koeth
Raleigh, North Carolina

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Malcolm Dwight Smith II,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 12, 2023
Corrected

Court of Appeals Case No.
21A-CR-1514

Appeal from the LaPorte Superior
Court

The Honorable Jaime Oss, Judge

Trial Court Cause No.
46D01-2006-F4-766

**Opinion by Judge Pyle**

Judges Robb and Weissmann concur.

**Pyle, Judge.**

## Statement of the Case

Malcolm Dwight Smith II ("Smith") appeals, following a jury trial, his conviction for Level 4 felony burglary.[1] Smith argues that: (1) the trial court violated his right to a speedy trial; (2) the trial court abused its discretion when it admitted evidence ; and (3) there was insufficient evidence to support his conviction. Finding no error, we affirm the trial court's judgment.

We affirm.

## Issues

1.  Whether the trial court violated Smith's right to a speedy trial.

2.  Whether the trial court abused its discretion when it admitted evidence.

3.  Whether there is sufficient evidence to support Smith's conviction.

## Facts

In 2017, Brianna Neyhart ("Neyhart") and Torez Pearson ("Pearson"), after being in a fourteen-year-long relationship, got married and had two daughters. Sometime in 2019, Neyhart separated from Pearson and entered into a

---

[1] IND. CODE § 35-43-2-1.

relationship with Smith. Sometime later, Neyhart ended her relationship with Smith and returned to Pearson.

[4]    In May 2020, Neyhart and Pearson, who were then back together, and their two daughters were living at the Dunes Inn ("the Dunes") in Michigan City, Indiana. Smith was living at the Red Roof Inn ("the Red Roof") across the street from the Dunes.

[5]    On the morning of May 27, 2020, Neyhart left her room in order to smoke a cigarette and collect some money that her friend owed her. Neyhart left her one-year-old daughter ("Younger Daughter") in her room alone. During this time, Pearson had left the Dunes to take their other daughter ("Older Daughter") to the dentist. Pearson left his two Glock cases, each containing one Glock handgun ("Glock cases"), in the room.

[6]    While Neyhart was out of the room smoking, Smith entered the room. Smith saw Younger Daughter in the room alone along with Pearson's Glock cases. Smith left the room but returned a few seconds later. Smith grabbed the Glock cases, tucked them under his shirt, and left. Smith also called the police to report that Younger Daughter was alone in the room.

[7]    LaPorte County Deputy Michael Sweet ("Deputy Sweet") arrived at the Dunes and headed to Neyhart and Pearson's room, where he found the room door partially open and Younger Daughter sleeping. When Neyhart returned less than ten minutes later, she found Deputy Sweet in her room. Deputy Sweet informed Neyhart that he had come to her room to perform a welfare check on

a child who had been left alone. Deputy Sweet informed Neyhart that he had to file a report and that the Department of Child Services would follow up with her. Deputy Sweet left the Dunes. Neyhart, not noticing that the Glock cases were missing, packed up her things and left the Dunes with Younger Daughter.

[8] Later that day, Pearson returned to the room with Older Daughter. Pearson, who had planned to go to the shooting range after Older Daughter's dentist appointment, immediately noticed that his Glock cases were missing. Pearson called Neyhart and asked her if she had taken the Glock cases. Neyhart denied taking the Glock cases. Pearson met up with Neyhart, and they both returned to the Dunes.

[9] Neyhart and Pearson went across the street to the Red Roof in order to ask Pearson's friend, Zach Likens ("Likens"), if he had taken the Glock cases. However, before they could find Likens, Smith approached Pearson. Smith and Pearson began arguing, and Smith told Pearson that he would "bust on him with [Pearson's] own guns." (Tr. Vol. 2 at 86). Pearson and Neyhart returned to the Dunes, and Pearson called the police to report that his Glock cases had been stolen.

[10] Deputy Sweet returned to the Dunes and collected a description of the Glock cases from Pearson. Deputy Sweet also spoke with Hotel Manager Kalpeshkumar Patel ("Manager Patel"). Manager Patel, who had cameras installed at the Dunes, showed Deputy Sweet a video recording ("the video recording") of Smith entering Pearson and Neyhart's room and leaving with the

Glock cases tucked under his shirt. Manager Patel "was unable to provide a copy of the video at the time but advised that he would email" a copy to Deputy Sweet at a later time. (App. Vol. 2 at 17). Deputy Sweet included this fact in his probable cause affidavit and took photographs of the video recording for his report. Specifically, Deputy Sweet took photographs of the video recording where the image of the individual and the Glock cases tucked under his shirt were the clearest.

[11] Deputy Sweet, before he left the Dunes, gave Pearson a description of the individual that he had seen in the video recording. This included the individual's approximate height and hairstyle. Pearson, after hearing this description, immediately went with Neyhart to the Red Roof. There, Pearson and Smith got into another verbal argument. Pearson also accused Smith of stealing his Glock cases. Officers arrived at the Red Roof, but made no arrests.

[12] The next day, Manager Patel emailed the video footage to Deputy Sweet. Deputy Sweet placed the video recordings into the police evidence locker. Pearson also provided the serial numbers for the handguns contained in the Glock cases to Deputy Sweet for his report.

[13] A few days later, Neyhart visited the Blue Chip Casino ("the casino") to gamble. Neyhart, while she was in her car and parked in the casino's garage, saw Smith approaching. Smith knocked on her window, and Neyhart unlocked her car door. Smith joined Neyhart in the car, and they had a conversation. During this conversation, Neyhart asked Smith, "[w]hy would you do

something so stupid?" (Tr. Vol. 2 at 89). Smith apologized to Neyhart and explained that he had called the police when he saw Younger Daughter alone in Neyhart's room. Smith also admitted to taking Pearson's Glock cases and selling them. Afterward, Smith exited Neyhart's car, and Neyhart headed into the casino to gamble.

[14]   In June 2020, the State charged Smith with Level 4 felony burglary. At his June 30 initial hearing, Smith told the trial court that he was "manic depressive" and had not taken medication for his condition in years. (Tr. Supp. at 5). Smith also said that he would get an attorney, and the trial court responded that it was "very important" for Smith to "either hire that attorney as soon as possible" or "have that attorney appointed as soon as possible[.]" (Tr. Supp. at 8). Smith also made a speedy trial request to the trial court.

[15]   During the hearing, Smith, over a dozen times, cut off the trial court and attempted to discuss the facts of his case. The trial court repeatedly reminded Smith that this hearing was only his initial hearing and that he should not discuss the facts of his case. The trial court told Smith, "again - the facts - we're not having a trial[.]" (Tr. Supp. 9). The trial court asked Smith to stop talking three more times. Afterward, the trial court told Smith that it was "concerned about the fact that [Smith] [was] . . . making these statements voluntarily and - I'm . . . going to note . . . that you made this fast and speedy trial request and when your public defender . . . is . . . notified of their appointment they'll also be noticed of this request." (Tr. Supp. at 10). The trial court explained to Smith that the public defender would ultimately decide whether or not to

maintain the speedy trial request. Smith responded that he "would go pro se" and that he "did not need an attorney." (Tr. Supp. at 10). The trial court told Smith that he had the right to proceed pro se, but that it was concerned because Smith had both asked for an attorney and asked to go pro se. The trial court continued to express its concern because of Smith's untreated mental illness. Smith interrupted the trial court and began talking about his case again. The trial court informed Smith that it had appointed a public defender to represent him and had also set a bond hearing for July 16. Smith interrupted the trial court and began to talk about the facts of his case and mentioned Indiana Criminal Rule 26. The trial court ended the hearing.

[16] The next day, Attorney David Jones ("Attorney Jones") entered an appearance for Smith. At the July 16 bond hearing, the trial court denied Smith's request for a bond reduction. Attorney Jones reminded the trial court of the speedy trial request pursuant to Indiana Criminal Rule 4(B), and the trial court set a final pretrial conference for August 8 and a trial date for September 8.

[17] At a July 31 hearing, the trial court noted that Smith's trial date had been moved up to August 31. However, another trial had been scheduled for that day. Attorney Jones requested a continuance of Smith's trial date and requested that the trial court "to set for status sometime in the future." (Tr. Supp. at 23). When the trial court asked Attorney Jones if he wanted a new trial date scheduled that day, Attorney Jones replied, "[w]e waive, Your Honor, so we can maybe work out a plea in this case." (Tr. Supp. at 24). The trial court noted that Smith had waived the "Criminal [Rule] 4 issue . . . as well"

and, at Smith's request, set a status conference for September 10. (Tr. Supp. at 24).

[18] Sometime before the September 10 status hearing, Attorney David Payne ("Attorney Payne") entered an appearance for Smith to replace Attorney Jones. At the September 10 hearing, the trial court set a final pretrial conference for November 12 and a trial date of December 14. Smith told the trial court that he, from day one, wanted to "go pro se if [his attorneys] were going to mess with any of [his] trial dates." (Tr. Supp. at 29). Smith further stated that he had begun taking medication for his bipolar disorder and that he never wanted any lawyers "to be able to have any thing above or under [his] case that may take [his] right to a fast and speedy trial." (Tr. Supp. at 29).

[19] The next day, while still represented by counsel, Smith filed a hand-written motion to dismiss. The trial court did not respond to the motion. On September 24, the trial court held another hearing. At this hearing, Attorney Payne told the trial court that he was "not able or willing to try th[is] case on a speedy trial basis" and asked the trial court for a continuance. (Tr. Supp. Vol. 2 at 4). Smith reminded the trial court that he had said that "if [his] public defender was gonna vacate . . . my fast and speedys, then [he] would much rather go pro se[.]" (Tr. Supp. Vol. 2 at 6). The trial court granted Smith's motion to continue.

[20] On February 25, 2021, the trial court released Smith on his own recognizance under the condition that he immediately report to the LaPorte County

Community Corrections GPS monitoring program. Smith also agreed to not commit any new offense and to submit to weekly drug testing. On March 3, 2021, Smith violated the terms of his release, and officers arrested him. On March 25, 2021, Smith's counsel requested another speedy trial date under Indiana Criminal Rule 4(B). The trial court granted Smith's request. In May 2021, five days before the trial, the State, when speaking with Deputy Sweet in preparation for trial, found the video recording. The State immediately emailed the video recording to Smith's counsel.

[21] The trial court held a jury trial, and the jury heard the facts as set forth above. Additionally, the State attempted to call Manager Patel as a witness in order to lay the foundation for the admission of the video recording as State's Exhibit 1. Outside of the presence of the jury, Smith argued that the admission of Manager Patel's testimony and the video recording amounted to "trial by ambush" and was simply unfair. (Tr. Vol. 2 at 143). The State explained that it had not known the video recording existed, and it had discovered it when speaking with Deputy Sweet in preparation for the trial. The State told the trial court that it had "immediately emailed it to [Smith] . . . as soon as [it] had knowledge [that] [the video recording] existed." (Tr. Vol. 2 at 142). The State argued that there was no intent to ambush Smith and that the proper remedy would be for a continuance. Smith conceded that there had been no "bad intentions on the State's part." (Tr. Vol. 2 at 144).

[22] After a brief recess, the trial court determined that the appropriate remedy was "not the exclusion of [Manager Patel's] testimony, but [wa]s to allow [Smith] a

continuance . . . to depose [Manager Patel]." (Tr. Vol. 2 at 146). The trial court asked Smith if he wanted a continuance and if so, for how many days. Smith responded that he did not want a continuance. Smith elaborated that he did not want the continuance "as a matter of principle" because of Smith's speedy trial requests. (Tr. Vol. 2 at 146). The trial court allowed Manager Patel to testify over Smith's objection and also admitted the video recording as State's Exhibit 1 over Smith's objection.

[23] After the State rested, Smith moved for a mistrial. Specifically, Smith argued that the unfair surprise of witnesses and exhibits made it "impossible for [Smith] to get a fair trial." (Tr. Vol. 2 at 215). The trial court denied Smith's motion.

[24] At the conclusion of the jury trial, the jury found Smith guilty of Level 4 felony burglary. The trial court sentenced Smith to six (6) years in the Indiana Department of Correction.

[25] Smith now appeals.

## Decision

[26] Smith argues that: (1) the trial court violated his speedy trial rights; (2) the trial court abused its discretion when it admitted evidence; and (3) there is insufficient evidence to support his burglary conviction. We address each of his arguments in turn.

### 1. Speedy Trial Request

[27] Smith first argues that the trial court violated his right to a speedy trial under Indiana Criminal Rule 4(B). A Rule 4(B) violation must be raised through a motion for discharge before the trial court, and the court's ruling on that matter is reviewed for clear error. *Austin v. State*, 997 N.E.2d 1027, 1040 (Ind. 2013). We neither reweigh the evidence nor determine the credibility of witnesses. *Id.* (internal quotation marks and citations omitted). We consider only the probative evidence and reasonable inferences supporting the judgment and reverse only on a showing of clear error. *Id.* (internal quotation marks and citations omitted). Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* (internal quotation marks and citations omitted).

[28] Indiana Criminal Rule 4(B)(1) provides that "[i]f any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion[.]" If a defendant does not file a motion for discharge following the expiration of the seventy-day window, the issue is waived. *Roseborough v. State*, 625 N.E.2d 1223, 1224 (Ind. 1993).

[29] Smith specifically argues that the trial court violated his right to a speedy trial under Indiana Criminal Rule 4(B) "when the [c]ourt continued . . . Smith's trial at the request of . . . Smith's attorneys[.]" (Smith's Br. 17).[2] We disagree.

[30] Here, our review of the record reveals that Smith never filed a motion for discharge after September 8, 2020, the seventieth day after his initial speedy trial request on June 30. Thus, he has waived this issue on appeal. *See Roseborough*, 625 N.E.2d at 1224. To the extent that Smith argues that his September 11 motion to dismiss constituted a motion for discharge, we note that when a defendant is represented by counsel, he speaks to the court through that counsel. *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000). The record is clear that Attorney Payne represented Smith at the time of his September 11 motion to dismiss, and the trial court was not required to respond to Smith's pro se motion to dismiss while he was represented by counsel. *See also Flowers v. State*, 154 N.E.3d 854, 867 (Ind. Ct. App. 2020) (holding that when a defendant is represented by counsel, the trial court "is not required to respond to the defendant's objections or motions").

[31] Smith's arguments also fail because Attorney Jones had waived his speedy trial request at the July 31 hearing, just a month after Smith's June 30 initial hearing where he had requested a speedy trial. Even if Smith had renewed his request

---

[2] Smith, in his brief, limited his Indiana Criminal Rule 4 arguments to "the continuances prior to December 17, 2020[,]" which was the date that the Indiana Supreme Court paused all jury trials due to the COVID-19 Pandemic. (Smith's Br. 18).

for a speedy trial after this point, Attorney Payne had also waived his speedy trial request at a September 24 hearing.  Thus, we hold that the trial court did not violate Smith's right to a speedy trial under Indiana Criminal Rule 4(B). [3]

## 2. Admission of Evidence

[32] Smith next argues that the trial court abused its discretion when it admitted the testimony of Manager Patel and the video recording.  Specifically, he argues that it was inadmissible because the State had not disclosed this evidence to Smith until the week before trial.  Smith contends that this alleged discovery violation entitled him to the exclusion of the evidence at trial or a mistrial. [4]

[33] Trial courts have broad discretion in dealing with discovery violations by the State in the alleged late disclosure of evidence to the defense.  *Alcantar v.* State, 70 N.E.3d 353, 356 (Ind. Ct. App. 2016).  We may reverse the manner in which the trial court deals with such an alleged violation only for an abuse of that discretion involving clear error and resulting prejudice.  *Id.* (internal citations

---

[3] Smith also argues that the trial court violated his right to self-representation.  Smith only makes this argument to contrast his case from *Underwood*, where the Indiana Supreme Court held that a defendant who is represented by counsel speaks to the court through counsel.  *Underwood*, 722 N.E.2d at 832.  Specifically, Smith argues that his case is distinguishable from *Underwood* because he had "advised the trial court from the time of his initial hearing that he wanted to proceed pro se rather than giving up his request for a speedy trial." (Smith's Br. 21).  However, Smith provides no cogent argument pointing to any cases or authorities that support his claim that his pro se statement at his initial hearing coupled with his statements made while represented by counsel lead to the conclusion that his self-representation rights were violated.  Thus, he has waived the argument on appeal.  *See* Ind. Appellate Rule 46(A)(8).

[4] Smith did not cite to a standard of review for a discovery violation as required by Indiana Appellate Rule 46(A)(8)(b).

omitted). Generally, the proper remedy for a discovery violation is a continuance. *Id.* If a continuance would have cured the harm that arose by the discovery violation, failure to request one results in waiver. *See Fleming v. State*, 833 N.E.2d 84, 91 (Ind. Ct. App. 2005).

[34] Before our analysis, we remind both parties of the importance of reviewing their cases. Deputy Sweet's probable cause affidavit clearly refers to the video recording and the fact that Manager Patel would be sending a copy to him. Even a cursory review of the probable cause affidavit would have made both parties aware of the existence of the video recording. While the State has the responsibility to provide timely discovery, we advise both parties that careful and timely attention to the facts within their case files will prevent needless delays and claims of surprise. Further, we note that trial courts have the discretion to impose sanctions for the untimely provision of discovery, including the suppression or exclusion of evidence or the dismissal of charges. See Indiana Trial Rule 37. *See also Lindsey v. State*, 877 N.E.2d 190, 196 (Ind. Ct. App. 2007) (noting that exclusion of evidence is available as a sanction for State's noncompliance with discovery order); *Robinson v. State*, 450 N.E.2d 51, 52 (Ind. 1983) (noting that dismissal of charges is also a sanction within the arsenal of the trial court when the State fails to give access to evidentiary materials). Thus, the cost of failing to carefully examine the facts of the case can be high, and parties should diligently work to avoid them.

[35] Here, our review of the record reveals that Smith, when asked by the trial court if he wanted a continuance, decided against one "as a matter of principle[.]"

(Tr. Vol. 2 at 146). Thus, he has waived this argument on appeal. *See Fleming*, 833 N.E.2d at 91.

[36] In an effort to circumvent waiver, Smith cites to *Dillard v. State*, 102 N.E.3d 310, 312 (Ind. Ct. App. 2018) for the proposition that "it is unfair to put a defendant in an untenable situation in deciding to proceed to trial unprepared or waive the defendant's right to a speedy trial." (Smith's Br. 23). In *Dillard*, the defendant moved for a continuance on the day of trial, which also happened to be the last possible day that the defendant could have been tried to comply with his speedy trial request. *Dillard* is distinguishable from the case before us because Smith never moved for discharge, never moved for a continuance, and still had nearly a month before the expiration of his speedy trial request.[5]

### 3. Sufficiency of the Evidence

[37] Lastly, Smith argues that the evidence was insufficient to support his conviction. Our standard of review for sufficiency of the evidence claims is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or judge witness credibility. *Id.* We will affirm the conviction unless no reasonable fact finder could find the elements of the crime

---

[5] Smith also argues that the trial court should have granted his motion for mistrial. However, Smith provides no cogent argument pointing to any cases or authorities that support this claim. Thus, he has waived the argument on appeal. *See* Ind. Appellate Rule 46(A)(8).

proven beyond a reasonable doubt. *Id.* at 146-47. The evidence is sufficient if an inference may be reasonably drawn from it to support the verdict. *Id.* at 147.

[38] Smith attacks his burglary conviction by arguing that the State failed to prove that he "knowingly or intentionally intended to commit . . . theft." (Smith's Br. 24). We disagree.

[39] INDIANA CODE § 35-43-2-1 provides that "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary[.]" The offense is a Level 4 felony "if the building or structure is a dwelling[.]" I.C. § 35-43-2-1(1). "Burglars rarely announce their intentions at the moment of entry, and indeed many times there is no one around to hear them even if they were to do so." *Baker v.* State, 968 N.E.2d 227, 229 (Ind. 2012) (internal quotations and citations omitted). Hence, a burglar's intent to commit a specific felony at the time of the breaking and entering may be inferred from the circumstances. *Id.* at 229-30. There must be a "specific fact that provides a solid basis to support a reasonable inference that the defendant had the specific intent to commit a felony." *Freshwater v. State*, 853 N.E.2d 941, 944 (Ind. 2006).

[40] Our review of the record reveals that Smith entered Neyhart and Pearson's room at the Dunes, left the room, returned almost immediately thereafter, and then left with the Glock cases tucked under his shirt. Smith's entry into the room and his exit with the Glock cases were captured by the video recording provided by Manager Patel and the photos taken by Deputy Sweet of the same

video recording. Further, both Pearson and Neyhart testified that Smith had threatened to shoot Pearson with Pearson's own guns. Neyhart also testified that Smith had admitted entering Neyhart's room, taking Pearson's Glock cases, and selling them sometime later. All of this evidence supports the inference that Smith had entered Neyhart and Pearson's room with the intent to commit theft. *See Baker*, 968 N.E.2d at 231 (holding that breaking and entering followed by opening cupboards and drawers with no evidence of anything being taken was enough to support the specific intent to commit theft).

[41] Smith also challenges the credibility of Neyhart and Pearson's testimony. However, these arguments amount to a request for this Court to reweigh the evidence, which we will not do. *See Drane*, 867 N.E.2d at 146. Accordingly, we hold that there was sufficient evidence to support Smith's Level 4 felony burglary conviction.

[42] Affirmed.

Robb, J., and Weissmann, J., concur.