In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-3030

DAVID L. LEWICKI,

*Petitioner-Appellee,*

*v.*

DONALD EMERSON, Warden, Plainfield Correctional Facility,

*Respondent-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:20-cv-01653-TWP-CSW — **Tanya Walton Pratt**, *Chief Judge.*

_____

ARGUED MAY 24, 2024 — DECIDED JUNE 3, 2024

_____

Before EASTERBROOK, KIRSCH, and LEE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* During an attempted robbery, Humberto Pelayo was beaten and suffered permanent injuries. David Lewicki concedes being part of a group of persons who tried to get money from Pelayo but contends that someone else struck the blows. Lewicki says that the group's goal had been to trick Pelayo by purporting to sell him drugs, then take the money without delivering the goods. According to Lewicki, when the beating started he intervened to defend

Pelayo. The jury did not believe this and found Lewicki guilty of an attempt to commit robbery causing serious bodily injury. Ind. Code §35-42-5-1. The judge sentenced him to 65 years' imprisonment as a habitual offender. State courts affirmed, 2015 Ind. App. Unpub. LEXIS 1236 (Nov. 4, 2015), and denied a petition for collateral relief, 2019 Ind. App. Unpub. LEXIS 876 (July 10, 2019).

Lewicki fared better in federal court. A district court issued a conditional writ of habeas corpus after finding that Lewicki's appellate lawyer should have argued that the state violated the Sixth Amendment by failing to provide him with a speedy trial. 2023 U.S. Dist. LEXIS 168089 (S.D. Ind. Sept. 21, 2023). Omission of this argument amounted to ineffective assistance of counsel, the court held, under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Yet the district court did not hold that Indiana violated the Speedy Trial Clause. Instead the court stopped after concluding that a speedy-trial argument would have been stronger than any of the three arguments that appellate counsel did advance. The federal judge thought that the decision on the merits should be made by the state judiciary and ordered Indiana to release Lewicki unless it provided him with a new appeal.

The district court's approach has a fundamental problem. Collateral relief under *Strickland* requires both deficient performance, which the district court found, and prejudice, 466 U.S. at 693–96, which the district court did not find.

Suppose appellate counsel considers potential issues A, B, C, and D. Following the common advice to concentrate one's fire, counsel presents those he deems the best: A, B, and C. Later a federal court concludes that D is better than any of these, so counsel should have argued D too (or perhaps D

instead of C). Ineffective assistance? Not unless D is a winner, or at least so likely to prevail that the outcome is in serious doubt. See *Thornell v. Jones*, No. 22–982 (U.S. May 30, 2024) (discussing *Strickland*'s prejudice requirement). Faced with an assortment of losing arguments, counsel does not injure the client by omitting one of them. Briefing fewer issues not only helps to focus a court's attention but also enables counsel to make a better argument—for the more issues in a brief, the less analysis can be devoted to each. Yet the district court did not find that D (speedy trial) is a winner, or even likely to succeed, but only that it is arguable. That leaves the prejudice component unsatisfied.

There is one way in which raising an unsuccessful argument could help a litigant. Multiple issues could attract one vote apiece, and a coalition of judges in the minority might produce a majority for reversal, even though each issue is a loser. This happened in *United States v. United States Gypsum Co.*, 550 F.2d 115 (3d Cir. 1977), affirmed on other grounds, 438 U.S. 422 (1978). But such an outcome is rare. It is possible only when the judges engage in outcome voting rather than issue voting. See David G. Post & Steven C. Salop, *Rowing Against the Tidewater: A Theory of Voting by Multijudge Panels*, 80 Geo. L.J. 743 (1992). A voting conundrum could not have occurred here, for Lewicki's appellate lawyer presented three issues without attracting a vote on any. Getting a single vote on a fourth issue would not have affected the decision.

So we must ask, as the district court did not, whether Lewicki has a *good* speedy-trial claim. To simplify the analysis we assume, without deciding, that Lewicki presented his speedy-trial claim to the state judiciary adequately and that the state court's decision does not receive deference under 28

U.S.C. §2254(d). Even with the benefit of those assumptions Lewicki does not prevail.

Lewicki was charged in December 2011 and brought to trial in November 2014. That delay, almost three years, is enough to create a presumption of prejudice under *Barker v. Wingo*, 407 U.S. 514 (1972), and its successors, such as *Doggett v. United States*, 505 U.S. 647 (1992). Apart from prejudice the constitutional considerations are pretty much a wash. The state's principal justifications are court congestion plus the fact that Lewicki's own lawyer proposed multiple continuances. Lewicki wrote several letters to the judge asking for a speedy trial at the same time as his lawyer was proposing delay (or acquiescing in delay proposed by the prosecutor). The state judge was entitled to disregard submissions from a represented litigant, see *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000), and evidently did so. Counsel's motions for delay undercut Lewicki's speedy-trial claim, see 407 U.S. at 530–31 (though *Barker* held that such motions do not *waive* a claim). Lewicki does not contend that the prosecutor sought to slow things down to obtain a strategic advantage.

*Barker* held that a delay of almost six years did not violate the Constitution. It reached this conclusion after finding that the state had rebutted any prejudice presumed from the timing, and the same is true for Lewicki.

Delay may cause prejudice when evidence is lost or memories fade. Lewicki does not make an argument along these lines. All five participants in the attempted robbery (the four assailants plus Pelayo) spoke with the police soon after the crime. Pelayo and Lewicki landed in the same hospital, where Lewicki expressed interest in Pelayo's condition. Lewicki was injured by a machete during the affray. His confederates

drove him to the hospital but left Pelayo to fend for himself. Lewicki declined to explain at the hospital how he had been injured. After his discharge he gave a statement to the police. In testimony at trial he admitted involvement in an effort to "rip off" Pelayo—effectively confessing to attempted robbery—but denied planning to injure him. No one asserted memory loss or contended that physical evidence had vanished. DNA connected Lewicki to several items, including the machete and a knife, used in or linked to the crime.

Time in prison awaiting trial also can be prejudicial, as conditions in local jails may be inferior to those in state and federal prisons—and persons acquitted after trial suffer the greatest prejudice, even though they do not have appellate speedy-trial claims. The Court found it significant in *Barker* that the defendant was on bail for all but 10 months of the pretrial time. Similarly, little of Lewicki's time in custody can be attributed to the delayed trial of the attempted-robbery charge. When arrested, Lewicki was serving a suspended sentence for another crime. Five months after his arrest, the suspension was revoked. Soon Lewicki was charged in an unrelated criminal case. He was convicted and in April 2013 was sentenced to 60 years in prison. Delay in getting Lewicki to trial on the attempted-robbery charge thus made little contribution to his time in custody. (His pretrial time in custody attributable to this charge would have been the same had his trial occurred six months after his arrest.)

Lewicki's brief in this court asserts that he suffered prejudice because "additional time allowed the State to continue to rework the case, amend the charging information, and process and ultimately admit DNA evidence, all of which were to Mr. Lewicki's detriment." That single sentence is the

entirety of his argument about prejudice. It is vague to the point of being generic. He does not explain why DNA evidence would have been unavailable had the case been tried earlier, and the amendment to which he alludes (the habitual-offender allegation) can be made until 30 days before trial. Ind. Code §35-34-1-5(e). Prosecutors did not need or use delay to discover Lewicki's criminal record. He has a poorer claim of prejudice than Barker did, yet Barker lost after a delay a good deal longer than the delay Lewicki experienced.

REVERSED