**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 07 2013, 9:57 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRICE DUTROW, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 30A04-1207-CR-356 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable Terry K. Snow, Judge
Cause No. 30D01-1111-FA-2001

**May 7, 2013**

**OPINION – NOT FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

Brice Dutrow ("Dutrow") appeals various issues related to his open guilty plea to burglary and robbery, both Class A felonies.[1]

We affirm.

ISSUES

1.  Whether the trial court abused its discretion in allowing the State to belatedly amend the charging information to add an habitual offender allegation three days before trial;

2.  Whether the trial court abused its discretion in denying Dutrow's motion for continuance to prepare his defense against the State's belatedly amended habitual offender enhancement;

3.  Whether the trial court abused its discretion by denying Dutrow's pro se motions to withdraw his guilty plea;

4.  Whether the trial court abused its discretion in not citing Dutrow's guilty plea as a mitigator; and

5.  Whether Dutrow's sentence is inappropriate.

FACTS AND PROCEDURAL HISTORY

On November 8, 2011, Dutrow and an accomplice, Nicholas Paduani ("Paduani"), went to a trailer occupied by Brian Robbins ("Robbins"). Robbins, who had overcome physical and mental disabilities caused by a brain injury, was living on his own for the first time. Dutrow and Paduani forced their way into the trailer, and Dutrow held Robbins while Paduani ransacked the trailer. Dutrow forced Robbins to the ground, and

---

[1] Pursuant to Indiana Code § 35-43-2-1(2)(A), the burglary was charged as a Class A felony because it resulted in "bodily injury" to the victim. (App. 135). Pursuant to Indiana Code 35-42-5-1(2), the robbery was charged as a Class A felony because it resulted in "serious bodily injury" to the victim. *Id*.

Dutrow and Paduani began kicking and stomping Robbins' head and back. Robbins suffered a concussion, broken jaw, contusions, and lacerations during the course of the burglary and robbery. Impressions from Dutrow's shoes were left on Robbins' face and back.

Meanwhile, neighbors had noticed the men enter the trailer and heard shouts from inside. A neighbor called the police, who arrived almost immediately. When Dutrow and Paduani heard the police sirens, they attempted to flee. In their hurry, they left behind a duffle bag filled with many of Robbins' belongings. A neighbor ordered Dutrow to stop running and then detained Dutrow until police arrived to arrest him. At the time of his arrest, Dutrow had Robbins' wallet on his person. Dutrow told one of the officers that he "was angry during the attack and he just lost control." (App. 140).

The State charged Dutrow with Class A felony burglary and robbery, as well as Class C felony battery and Class D felony theft. Within ten days of the January 11, 2012 omnibus date, the State offered a plea agreement to Dutrow. The State gave Dutrow notice that it was withholding the filing of an habitual offender allegation "pursuant to the ongoing [plea] negotiations." (Tr. 7).

At pretrial conferences in January, February, and March of 2012, Dutrow and the State discussed the possibility of a plea agreement whereby the State would dismiss the battery and theft charges and forego filing an habitual offender allegation if Dutrow would plead guilty to the charged Class A felonies. At all three conferences, the State informed Dutrow that it would file the habitual offender allegation if plea negotiations

3

were unsuccessful. The parties continued negotiations until shortly before trial, with the State extending a counter-offer on the morning of April 25, 2012, which again included an agreement to not file the habitual offender count if the plea was accepted. Dutrow did not agree to the plea agreement because he wanted to discuss it with his family.

On April 27, 2012, the Friday before the Monday trial date of April 30, the State filed a motion to add the habitual offender allegation. That morning, the State informed Dutrow's counsel that it was filing the habitual offender charge, and counsel responded that he "understood." (Tr. 9). Later in the day, the State informed defense counsel that "there would be no offer extended from that time on . . . that the only possibility would be for him to come in on Monday morning [the day of trial] and plead directly to the court, guilty as charged." *Id.*

On April 30, 2012, the first day of trial, defense counsel objected to the filing of the habitual offender allegation and alleged that the State failed to show good cause for an untimely filing. Alternatively, defense counsel asked for a continuance to review the evidence that the State intended to use to prove the habitual offender enhancement. The trial court denied the defense motions on the basis that defense counsel had been aware for three months that the enhancement would be filed if Dutrow and the State did not agree to the terms of the State's proposed plea agreement. The trial court accepted the State's motion to add an habitual offender allegation.

After consulting with defense counsel, Dutrow decided that he would plead guilty to the Class A felony counts of burglary and robbery. The State argued that Dutrow's

4

plea was not "an agreement" because Dutrow was simply pleading open to the trial court on the most serious charges, and the State would then dismiss the remaining lesser charges "from the standpoint of merger." (Tr. 16). The trial court disagreed with the State's argument, and the State agreed to submit a plea agreement wherein Dutrow pled guilty to the Class A felony charges and the State dismissed the remaining charges. Dutrow acknowledged that the plea did not prevent the State from pursuing the habitual offender allegation. Sentencing was left to the discretion of the court.

After Dutrow was advised of his rights and a factual basis was established, the trial court found that Dutrow entered the plea knowingly, intelligently, and voluntarily. The court then entered convictions for the Class A felonies.

Thereafter, a jury was chosen, and the case proceeded to the habitual offender phase. The State presented evidence to establish prior, unrelated 2008 convictions for Class C felony burglary, Class C felony mischief, and Class D felony theft in Hancock County and a 2010 conviction for Class D felony domestic battery in Marion County. The trial court sustained Dutrow's objection to the admission of an arrest report that was part of the evidence presented to establish the prior domestic battery conviction. The State requested a continuance to obtain additional information to show that it was Dutrow who committed the domestic battery, and the trial court granted the request, giving the State until the next morning to obtain the required information.

The trial on the habitual offender allegation resumed the following morning with the State presenting the testimony of a fingerprint expert to establish that Dutrow

committed the prior domestic battery in Marion County. Dutrow's counsel conducted a vigorous cross-examination challenging the validity of the expert's conclusions. After considering the evidence, the jury found Dutrow to be an habitual offender.

On June 1, 2012, and June 11, 2012, Dutrow filed pro se motions to set aside his guilty plea. The trial court denied the first motion because it was not signed by defense counsel, and it denied the second motion for an unspecified purpose.

At the June 13, 2012 sentencing hearing, the State presented evidence that Robbins was so withdrawn and anxious after leaving the hospital that he had to move back to his mother's house for a short time. At the time of hearing, Robbins was living in an apartment near his mother's home, but his anxiety levels were so high that he became ill if he left the apartment. Dutrow presented witnesses who testified that he was non-violent when he was not under the influence of drugs or alcohol. However, he admitted that he did not take advantage of opportunities for rehabilitation.

The State requested that the trial court sentence Dutrow to a thirty-five (35) year term on each of the felonies, with the terms to run concurrently. The State further requested that one of the convictions be enhanced by thirty (30) years for the habitual offender determination. Defense counsel made no recommendation but asked the trial court to consider Dutrow's remorse and guilty plea as mitigators.

The trial court found the following aggravators: (1) the special circumstances of the attack; (2) the magnitude of Dutrow's criminal history; and (3) the number of probation, parole, and/or community corrections violations. The trial court found no

6

mitigators. The court sentenced Dutrow to concurrent terms of forty-five (45) years, with five (5) years suspended to probation, and an enhancement of thirty (30) years on the burglary conviction.

Dutrow now appeals.

DISCUSSION AND DECISION

1. State's Motion to Add Habitual Offender Charge/Prejudice

Dutrow contends that the trial court abused its discretion when it granted the State's April 27, 2012 motion to amend the charging information by adding the habitual offender allegation. Dutrow points out that Indiana Code § 35-34-1-5(e)[2] provides that such an amendment must be made no later than ten days after the omnibus date (here, January 11, 2012). Dutrow acknowledges that the statute authorizes the trial court to permit the filing of an habitual offender allegation at any time before the commencement of trial "upon a showing of good cause." However, Dutrow argues that the State failed to show that good cause existed. Dutrow further argues that he was prejudiced by the late filing.

A trial court's finding of good cause to permit the late filing of an habitual offender allegation is reviewed for an abuse of discretion. *Land v. State*, 802 N.E.2d 45,

[2] The statute was amended by 2013 Ind. Legis. Serv. P.L. 24-2013 (S.E.A. 31) (WEST). Effective July 1, 2013, Ind. Code § 35-31-1-5(e) provides that an amendment to an indictment or information to include a habitual offender allegation must be made at least thirty days before the commencement of trial. The statute also provides that "upon a showing of good cause, the court may permit the filing of a habitual offender charge at any time before the commencement of trial if the amendment does not prejudice the substantial rights of the defendant." The statute further provides that if the court permits the filing of a habitual offender charge less than thirty days before the commencement of trial, the court shall grant a continuance at the request of the: "(1) state, for good cause shown; or (2) the defendant, for any reason." This iteration of the statute does not apply to this case.

53 (Ind. Ct. App. 2004). An abuse of discretion occurs only where the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id*.

Here, the trial court asked Dutrow's trial counsel whether counsel was present at the pre-trial hearings on January 11, 2012; February 15, 2012; and March 14, 2012. (Tr. 10). Trial counsel answered in the affirmative. The trial court also asked trial counsel whether the "issue of the habitual was discussed at all three of those" and whether counsel was "fully aware" of the discussions. *Id*. Again, trial counsel answered in the affirmative. The trial court observed that the relationship between the plea agreement offered by the State and the habitual offender allegation was "no surprise" to trial counsel. *Id*. Trial counsel acknowledged that he had discussed the relationship with Dutrow. The trial court then observed:

> That the Defendant and defense counsel were fully aware of the allegations of the habitual offender. That this is not an ambush. This is something that was known from the get-go and discussed at the three pre-trials . . . . The Motion to Strike the Habitual is denied. The Motion for Continuance is denied. I've got thirty-five people sitting out here waiting to go to trial. I'm not gonna put it off at this point. This is not trial by ambush. Everybody knew what the rules were going in the front door.

(Tr. 11-12).

We agree with the trial court that defense counsel and Dutrow had known for months prior to the trial date that the State would file the habitual offender allegation if Dutrow did not agree to the terms of the State's proposed plea agreement. We also agree that neither defense counsel nor Dutrow were surprised by the State's request to amend the charging information. Indeed, Dutrow's criminal history includes only two offenses

8

which meet the criteria of Indiana Code § 35-50-2-8(a), the statute outlining the offenses which the State may use to seek an habitual offender charge. Thus, Dutrow did not have to speculate as to the two offenses that the State would cite in its amendment.

A defendant who challenges the late addition of an habitual offender allegation must show that he was prejudiced thereby. *Russell v. State*, 487 N.E.2d 136, 137-38 (Ind. 1986). Such prejudice is established only by a showing that the defendant (1) had insufficient time to prepare for the habitual offender phase of his trial; (2) was unable to obtain evidence to marshal on his behalf; or (3) did not have sufficient time to investigate his prior convictions in order to determine whether grounds for collateral attack existed. *Daniels v. State*, 526 N.E.2d 1157, 1162 (Ind. 1988). Here, Dutrow merely asserts the grounds for possible prejudice without showing what particular prejudice he suffered because of the late amendment.

The trial court did not abuse its discretion in denying Dutrow's motion to deny the amendment. Furthermore, Dutrow was not prejudiced by the trial court's denial of his motion to deny the amendment.

2.    Dutrow's Motion for Continuance

Dutrow contends that the trial court abused its discretion in denying his motion for continuance. He argues that the trial court's ruling constituted a denial of his right to due process under the Sixth Amendment to the United States Constitution. Specifically, he claims that his trial counsel was denied the opportunity to prepare his defense to the habitual offender allegation.

9

The grant or denial of a motion for a continuance lies within the sound discretion of the trial court, and its decision will be reversed only for an abuse of that discretion. *Tharpe v. State*, 955 N.E.2d 836, 843 (Ind. Ct. App. 2011), *trans. denied.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and the effect of the facts and circumstances before the court and/or where the record demonstrates prejudice to the defendant from a denial of the continuance. *Id.*

Here, Dutrow cites no cases to support his claim. Thus, he has waived the issue on appeal. *See* Indiana Appellate Rule 46(A)(8)(a) (stating that each argument must be supported by cogent reasoning and citations to relevant law); *Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) (holding that an issue is waived when a party fails to provide adequate citation to authority), *trans. denied*.

Waiver notwithstanding, Dutrow has not shown that the trial court abused its discretion. Before it filed the request to add an habitual offender allegation, the State repeatedly informed Dutrow that it would add the habitual offender allegation if he did not agree to the State's proposed plea agreement. Futhermore, Dutrow knew the offenses that would be used as the basis for the allegation, as they were the only felonies on his criminal record. More importantly, Dutrow does not make a specific showing of how additional time would have benefitted his defense or how he was prejudiced. *See Jones v. State*, 701 N.E.2d 863, 871 (Ind. Ct. App. 1998) (holding that a defendant must make a "specific showing" as to how the additional time would have aided his defense and how

10

he was prejudiced by the denial of his motion for a continuance).[3] Dutrow has failed to show a basis for reversal on this issue.

3.      Dutrow's Motions to Withdraw his Guilty Plea

Dutrow contends that the trial court abused its discretion in denying his pro se motions to withdraw his guilty plea. He argues that he did not have sufficient time to make a knowing and voluntary plea and that the denial of his motions was a manifest injustice.

As a general rule, a defendant speaks to the trial court through his counsel, and the trial court is not required to respond to pro se communications with the court. *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000). Indeed, Indiana Rule of Trial Procedure 11(A) requires that "[e]very pleading or motion of a party represented by an attorney shall be signed by at least one [1] attorney of record . . . ." To require the trial court to respond to both the defendant and counsel would effectively create a hybrid representation to which a defendant is not entitled. *Underwood, id.* Here, the trial court's denial of Dutrow's first pro se motion expressly recognized that Dutrow was required to speak through his trial counsel. Although the trial court's denial of Dutrow's second pro se motion does not specify that the denial was on the merits, for the same reasons expressed above, the trial court was within its discretion in denying Dutrow's pro se motions.

---

[3] In his appellate brief, Dutrow raises the issue of whether the trial court abused its discretion in granting the State's subsequent request for a continuance in the habitual offender hearing. Dutrow fails to make cogent argument or cite any authority in support of his argument. Again, Dutrow's failure results in waiver on appeal.

Even assuming that the trial court denied the second pro se motion on its merits, Dutrow has not shown that withdrawal of his plea was necessary to correct a manifest injustice pursuant to Indiana Code § 35-35-1-4(b) (providing that a trial court shall allow a defendant to withdraw a guilty plea if the defendant proves that withdrawal of the plea is "necessary to correct a manifest injustice"). Manifest injustice is an imprecise standard, and an appellant seeking to overturn a trial court's decision faces a "high hurdle." *McGraw v. State*, 938 N.E.2d 1218, 1220 (Ind. Ct. App. 2010). Indeed, the trial court's ruling on a motion to withdraw a guilty plea is presumed correct. *Id.* In determining whether a manifest injustice has occurred, we may review the statements made by a defendant during the guilty plea hearing to determine whether the plea was knowingly and voluntarily made. *Id.*

Here, the guilty plea record reveals that both the plea agreement and the trial court fully advised Dutrow of the effect of his guilty plea. Before Dutrow signed the plea agreement, the trial court explained that the "fly in the ointment" was the habitual offender allegation which "would proceed should the Court accept the plea as to Counts I and II which are the [A felonies]." (Tr. 17). Dutrow answered that he understood. The trial court asked, "So is that your intent at this time, to go ahead and plead to Counts I and II and we'll face the habitual either through the bench or the jury?" (Tr. 18). Dutrow answered in the affirmative. The trial court then stated, "And I don't want to force you into anything because we're gonna do it in paper and go back over the whole thing here shortly." *Id.* Dutrow answered, "That's right." *Id.*

12

The State subsequently took a period of time to draft the agreement. After reviewing the written agreement with defense counsel, Dutrow initialed each plea advisement and signed the agreement. By initialing and signing the agreement, Dutrow represented that he understood and voluntarily agreed to plead guilty to the Class A felonies and let the trial court determine his sentence. The trial court then advised Dutrow of the rights that he was waiving and the effect of the agreement, and Dutrow informed the court that he was pleading guilty as his "own free and voluntary act." (Tr. 23). Dutrow subsequently affirmed the accuracy of the State's recitation of the factual basis for the plea. In short, Dutrow knowingly and voluntarily pled guilty and has not shown that there was a manifest injustice under the facts and circumstances of this case.

4.    The Trial Court's Alleged Abuse of Discretion in Sentencing

Dutrow contends that the trial court abused its discretion in sentencing by neglecting to consider a mitigating circumstance. Specifically, he claims that the trial court should have found that his guilty plea was a mitigator.

When evaluating sentencing challenges under the advisory sentencing scheme, we first confirm that the trial court issued the required sentencing statement, which includes a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). If the recitation includes a finding of mitigating or aggravating circumstances, the statement must identify all significant mitigating and aggravating

13

circumstances and explain why each circumstance has been determined to be mitigating or aggravating. *Id.*

So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

A trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor. *Gross v. State*, 769 N.E.2d 1136, 1140 (Ind. 2002). However, the trial court "may not ignore facts in the record that would mitigate an offense, and a failure to find mitigating circumstances that are clearly supported by the record may imply that the trial court failed to properly consider them." *Sherwood v. State*, 749 N.E.2d 36, 38 (Ind. 2001). An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999).

Indiana courts have recognized that a guilty plea is a significant mitigating factor in some circumstances. *Comer v. State*, 839 N.E.2d 721, 728 (Ind. Ct. App. 2005), *trans. denied.* Where the State reaps a substantial benefit from the defendant's plea, the defendant deserves to have a substantial benefit returned. *Id.* However, a guilty plea is not automatically a significant mitigating factor. *Id.* The significance of a guilty plea is lessened if it is made on the eve of trial and after the State has already expended

significant resources. *Primmer v. State*, 857 N.E.2d 11, 16 (Ind. Ct. App. 2006), *trans. denied.* The plea may also be considered less significant if there was substantial admissible evidence of the defendant's guilt. *Id.* (citing *Scott v. State*, 840 N.E.2d 376, 383 (Ind. Ct. App. 2006), *trans. denied*).

Here, after three months of negotiations, Dutrow waited until the day of trial to plead guilty. Thus, the State was forced to expend significant resources to prepare for trial, and the various witnesses, including the emotionally traumatized victim, were forced to be at the courthouse at the time the trial was scheduled to begin. In addition, the evidence against Dutrow, which included his confession to a police officer and the his possession of the victim's wallet at the scene, was substantial. Under these circumstances, we cannot find that the trial court abused its discretion by not finding his guilty plea to be a mitigating circumstance.

5.    Inappropriate Sentence

Dutrow contends that his aggregate sentence of seventy-five (75) years is inappropriate. He emphasizes that he saved the trial court valuable time by pleading guilty to the two Class A felony charges.

The revision of a sentence is authorized by the Indiana Constitution through Indiana Appellate Rule 7(B), which provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In determining the appropriateness of a sentence, a court of review may

15

consider any factors appearing in the record. *Schumann v. State*, 900 N.E.2d 495, 497 (Ind. Ct. App. 2009). The "nature of the offense" portion of the appropriateness review begins with the advisory sentence.[4] *Anglemyer*, 868 N.E.2d at 491; *Richardson v. State*, 906 N.E.2d 241, 247 (Ind. Ct. App. 2009). The "character of the offender" portion of the sentence review refers to general sentencing considerations and the relevant aggravating and mitigating circumstances. *Major v. State*, 873 N.E.2d 1120, 1131 (Ind. Ct. App. 2007), *trans. denied*. A defendant bears the burden of persuading us that his sentence is inappropriate. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008).

Regarding the nature of the offense, the trial court clearly inferred that Dutrow and Paduani purposely chose a disabled victim who could not defend himself. Dutrow forced Robbins to the ground, stomped on Robbins' head and back, and repeatedly kicked him in the head, face, and body. The force used by Dutrow and Paduani was so severe that Robbins suffered a concussion, a broken jaw, a long laceration on the back of his skull, a face injury that caused his eye to swell shut, numerous scrapes and bruises, and shoe impressions on his face and back. According to an investigating officer, Dutrow admitted that he was "angry" and "just lost control" before he "started wailing" on Robbins. (Tr. 140). The trial court described the attack as "one of the most violent cases I've dealt with." (Tr. 199). The attack by Dutrow and Paduani scared Robbins so much that he was, in essence, a prisoner in his own apartment. While Dutrow blames his

---

[4] I.C. § 35-50-2-4 states that a person who commits a Class A felony "shall be imprisoned for a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years."

16

actions on his drug and alcohol use, he has not taken advantage of numerous prior offers of assistance with his addiction problems.

Regarding the character of the offender, we observe that Dutrow committed his first violent act as a seventeen-year-old juvenile by battering his mother. As a nineteen-year-old adult, he committed burglary, theft, and institutional criminal mischief when he broke into a local elementary school. As a twenty-one-year old adult, he battered his girlfriend. In the instant case, as a twenty-three-year old adult, he escalated his violence by breaking into Robbins trailer and kicking and stomping Robbins until he was badly injured. Interspersed among his juvenile adjudication and his felony convictions are alcohol- and/or drug-related juvenile adjudications and misdemeanor convictions. In addition, Dutrow has violated the terms of his various probations and other court-granted privileges on numerous occasions. As a result, Dutrow has not persuaded us that his sentence is inappropriate.

Affirmed.

Robb, C.J., and May, J., concur.