## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 31 2015, 9:21 am

**CLERK**
of the supreme court,
court of appeals and
tax court

APPELLANT *PRO SE*

Brandon Scroggin
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brandon Scroggin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 31, 2015

Court of Appeals Case No.
64A03-1410-CR-352

Appeal from the Porter Superior Court
The Honorable William E. Alexa, Judge
Cause No. 64D02-1205-FC-4572

**Bradford, Judge.**

# Case Summary

[1] During the late evening hours of March 10, 2012 and early morning hours of March 11, 2012, Appellant-Defendant Brandon Scroggin took the vehicle of a

man whom he had met in a Lake County bar and drove it to Porter County, where he committed various criminal acts against his ex-girlfriend, V.M., and her family. On May 4, 2012, Appellee-Plaintiff the State of Indiana (the "State") charged Scroggin with Class D felony arson, Class D felony intimidation, and Class A misdemeanor criminal mischief. On June 29, 2012, the State filed an additional charge of Class C felony receiving stolen auto parts. The State also subsequently alleged that Scroggin was a habitual offender. The trial court held a trifurcated jury trial on August 6 through 9, 2012, after which the jury found Scroggin guilty as charged and determined that he was a habitual offender. On January 4, 2013, the trial court sentenced Scroggin to an aggregate term of nineteen and one-half years imprisonment.

[2]    In this belated appeal, Scroggin raises numerous contentions which we restate as whether: (1) his right to a speedy trial was violated, (2) he received ineffective assistance of trial counsel, (3) the evidence is sufficient to sustain his convictions, and (4) the trial court abused its discretion in sentencing him. Because we conclude that the trial court abused its discretion in imposing a portion of Scroggin's aggregate nineteen-and-one-half-year sentence, we affirm in part, reverse in part, and remand to the trial court with instructions.

## Facts and Procedural History

[3]    In January of 2012, V.M. lived in Portage with her six-year-old son. Near the end of January, V.M. met Scroggin. Although V.M. did not initially want to engage in a sexual relationship with Scroggin, "it happened anyways," trial tr.

p. 277, and she "got sucked into" the relationship. Trial Tr. p. 278. Scroggin soon "moved himself" into V.M.'s home. Trial Tr. p. 278. Twice during February of 2012, V.M. tried to convince Scroggin to move out of her residence, but each time Scroggin's uncle arrived to help him move out, Scroggin refused to leave. Scroggin was controlling of V.M. and prevented her from speaking with her friends over the telephone unless she put the telephone on "speaker." Trial Tr. p. 279.

[4] On March 10, 2012, two of V.M.'s friends decided to intervene on V.M.'s behalf. When one of these friends and V.M.'s mother came to V.M.'s residence, they noticed marks on V.M.'s body which had been inflicted upon V.M. by Scroggin. V.M.'s friend confronted Scroggin and V.M. told her mother that she wanted out of the situation. Scroggin collected his belongings and was cooperative with V.M.'s mother when she, taking V.M. with them, drove Scroggin to his uncle's home in Lake County. V.M. spent the rest of the day and evening with her friends at one of their homes. During the evening V.M. received numerous telephone calls from Scroggin.

[5] Later that night, Scroggin, who did not have his own vehicle, arrived at a bar in Lake County that was located a few blocks from his uncle's home. Inside the bar, Scroggin met an elderly gentlemen named Paul Rouhselange. Scroggin and Rouhselange used Rouhselange's white Ford minivan to drive to two other bars located nearby. Rouhselange allowed Scroggin to drive the minivan on at least one of those trips. While they were at one of the bars, Scroggin asked Rouhselange if he could use Rouhselange's cellular phone to "call his girlfriend

or something." Trial Tr. p. 260. Rouhselange agreed, and, after Scroggin had been gone for approximately fifteen to twenty minutes, Rouhselange looked outside the bar and noticed that his van and Scroggin were gone. Rouhselange had not given Scroggin permission to take the minivan.

[6] Scroggin used Rouhselange's cellular phone to call or text V.M. dozens of times. Some of Scroggin's voice messages were later recovered from V.M.'s cellular phone and were admitted into evidence at trial. In one of these messages, Scroggin screamed at V.M. that "[i]f you're at your mother's house, you'll hear this." Trial Tr. p. 295. Scroggin subsequently called V.M. and told her that he was "in a stolen vehicle, I got money in my pocket, and I don't give … a f[***] about anything right now." Trial Tr. p. 296. Scroggin later called V.M. and told her that he had set her vehicle on fire, but that he had "put it out for you." Trial Tr. p. 296. Scroggin also left a voice message telling V.M. that he was sorry for what happened to her vehicle and offering to fix it.

[7] After V.M. had turned off her phone and slept for a while, she awoke to find more voice messages from Scroggin. V.M. called her mother and told her to check on a red Monte Carlo that was parked outside of V.M.'s mother's home. The red Monte Carlo was registered to V.M.'s brother and was the vehicle that V.M.'s mother had used to move Scroggin out of V.M.'s residence the day before. V.M.'s mother saw that the Monte Carlo, which was parked on the street outside of her home, had been damaged on the driver's side. Specifically, the Monte Carlo had been dented on the driver's side and the entire driver's side was marred by a streak of white paint consistent with paint transferred

from a white or lighter-colored vehicle. The damage to the Monte Carlo was later estimated to be $2000.00.

[8] V.M.'s mother used another vehicle to pick V.M. up from her friend's residence and drive her to her residence, which was about six miles from her mother's home. V.M.'s red Ford Explorer was parked under the carport in front of V.M.'s residence. The Ford Explorer had been damaged by a fire that was later determined to have originated in the glove box and to have been intentionally set. The Ford Explorer was damaged to the point that it was no longer driveable. V.M. indicated that in light of the intimidating phone calls that she had received from Scroggin, his act of arson made her even more afraid of him because she knew he was capable of carrying through on his levied threats. Rouhselange's white minivan, which had been reported stolen, was later located by Rouhselange in a parking lot near the bar in Lake County from which Scroggin had taken it. The minivan had sustained front-end damage near the passenger-side headlamp.

[9] On March 13, 2012, V.M. obtained a no-contact order against Scroggin. V.M. subsequently received messages from Scroggin threatening to "set [her] place on fire." Trial Tr. p. 333. After receiving Scroggin's threat, V.M. and her son moved into a domestic violence shelter, where they stayed for thirty-six days.

[10] On May 4, 2012, the State charged Scroggin with Class D felony arson, Class D felony intimidation, and Class A misdemeanor criminal mischief. Scroggin was arrested on May 11, 2012, and remained in jail through the time of his trial.

During a May 15, 2012 initial hearing, Scroggin indicated that he wished to proceed *pro se* and requested a "fast and speedy" trial date pursuant to Indiana Rule of Criminal Procedure 4(B)(1) ("Criminal Rule 4(B)(1)"). May 15, 2012 Tr. p. 8. The trial court granted Scroggin's request and scheduled a jury trial for July 23, 2012.

[11] On June 25, 2012, the State filed a verified motion for a continuance because the deputy prosecutor had learned that a critical witness was unavailable to testify the week of July 23, 2012. The trial court granted the State's motion over Scroggin's objection. The trial court rescheduled Scroggin's trial for August 6, 2012. On June 29, 2012, the State filed an additional charge of Class C felony receiving stolen auto parts. The State also subsequently alleged that Scroggin was a habitual offender.

[12] Scroggin requested that he be appointed counsel during a July 2, 2012 initial hearing on the receiving stolen auto parts charge. The trial court granted Scroggin's requested and appointed counsel to represent Scroggin. On July 3, 2012, Scroggin filed a *pro se* motion for discharge, claiming that the seventy-day time limit for bringing an individual to trial prescribed in Criminal Rule 4(B) would expire on July 23, 2012, and that he should be discharged if not tried by that date.

[13] On July 13, 2012, the trial court held a hearing to discuss Scroggin's trial date. During this hearing, Scroggin's counsel notified the trial court that Scroggin "want[ed] to go ahead with" the August 6, 2012 trial date. July 13, 2012 Tr. p.

3. Also during this hearing, Scroggin personally confirmed that he wished to go ahead with the August 6, 2012 trial date.

[14] Scroggin's three-day trifurcated jury trial commenced on August 6, 2012.

> On August 9, 2012, Scroggin was found guilty of Arson, Intimidation, Criminal Mischief, and Receiving Stolen Auto Parts. On January 4, 2013, the trial court sentenced Scroggin to three years imprisonment for Arson, three years imprisonment for Intimidation, one year imprisonment for Criminal Mischief, and eight years imprisonment for Receiving Stolen Auto Parts; the sentences were run consecutively to one another. Pursuant to the jury's finding that Scroggin was a Habitual Offender, the trial court enhanced his sentence by 4½ years. This yielded an aggregate term of imprisonment of 19½ years.

*Scroggin v. State*, No. 64A04-1306-CR-312 *1 (Ind. Ct. App. June 30, 2014). This belated appeal follows.

# Discussion and Decision

## I. Right to a Speedy Trial

[15] Scroggin contends that his convictions should be reversed and the charges dismissed because the State failed to bring him to trial within the time period required by Criminal Rule 4(B)(1).

> When, as here, a defendant moves for a speedy trial, he invokes the procedures and deadlines of Criminal Rule 4(B)(1), which provides in relevant part:
>
> > If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where

a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

Our supreme court has noted that "[t]he purpose served by Crim. R. 4(B) is to prevent a defendant from being detained in jail for more than 70 days after requesting an early trial." *Williams v. State*, 631 N.E.2d 485, 486 (Ind. 1994). However, [Indiana Rule of Criminal Procedure 4(D) ("Criminal Rule 4(D)")] provides for an extension of this seventy-day period. *See Griffin v. State*, 695 N.E.2d 1010, 1013 (Ind. Ct. App. 1998). Specifically,

> If when application is made for discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued, and the prisoner remanded or admitted to bail; and if he be not brought to trial by the state within such additional ninety (90) days, he shall then be discharged.

Ind. Crim. Rule 4(D). Moreover,

> [a]ny exigent circumstances may warrant a reasonable delay beyond the limitations of Crim. R. 4, due deference being given to the defendant's speedy trial rights under the rule. The reasonableness of such delay must be judged in the context of the particular case, and the decision of the trial judge will not be disturbed except for an abuse of discretion. The purpose of Crim. R. 4(B) is to assure a speedy trial. This purpose is well served if the State must bring a defendant to trial within seventy days or show compelling reasons for the failure to do so. The rule was designed to assure criminal defendants speedy trials, not to provide them with a technical means of avoiding trial.

*Smith v. State*, 802 N.E.2d 948, 951 (Ind. Ct. App. 2004); *see also Lockhart v. State*, 671 N.E.2d 893, 897 (Ind. Ct. App. 1996) (noting abuse of discretion standard).

*Wilhelmus v. State*, 824 N.E.2d 405, 411-12 (Ind. Ct. App. 2005).

[16] In *Griffin*, the defendant was charged with possession of cocaine and possession of marijuana. 695 N.E.2d at 1012. Defendant requested a speedy trial pursuant to Criminal Rule 4(B)(1). *Id*. The State filed a motion for continuance upon learning that a chemist for the State Police was unavailable to testify on the scheduled trial date. *Id*. The trial court granted the State's motion for a continuance and scheduled a new trial date for a date that was twenty-eight days after the expiration of the time permitted by Criminal Rule 4(B)(1). *Id*. Defendant subsequently appealed.

[17] On review, we concluded that while the trial date fell outside the original seventy-day limit, it fell within the additional ninety days provided for by Criminal Rule 4(D). *Id*. at 1013. Specifically, we stated as follows:

> In other words, "the time within which a defendant who has demanded a speedy trial may be timely tried may be extended by an additional ninety days if the court is satisfied there is State's evidence which cannot be had on the timely trial date but that will be available within ninety days." *Wiseman v. State*, 600 N.E.2d 1375, 1377 (Ind. Ct. App. 1992), *reh'g denied, trans. denied*. Furthermore, when the unavailable evidence is a particular witness, the "reasonable effort" requirement of the rule is satisfied where the State is not at fault for the absence of the witness. *Id*.
>
> In its motion for continuance, the State explained that a witness was unavailable for the trial date of July 25, 1995 (sixty-nine days after the speedy trial motion), because of a previous arrangement to be out of the country. The trial court granted the State's motion and reset the trial date for August 23, 1995, (ninety-eight days after the speedy trial motion). Because the State did not procure the absence of the witness, the trial court was within its power under the statute to extend the speedy trial period by ninety days. As such, the new trial set for

twenty-eight days after the expiration of the seventy-day period was timely.

*Id*.

[18] In challenging his convictions on appeal, Scroggin argues that the trial court abused its discretion in granting the State's request for a two-week continuance. For its part, the State argues that the trial court acted within the trial court's discretion in granting its request for a continuance. We agree with the State.

[19] Like in *Griffin*, here, the State sought a continuance of Scroggin's trial which was scheduled for July 23, 2012, because "a critical witness [was] unavailable to testify the week of July 23, 2012." Appellant's App. p. 22. In its motion for a continuance, the State indicated that the witness would be available the week of August 6, 2012. During a June 25, 2012 hearing, the State further indicated that the reason for its request was that the State had learned that one of its critical witnesses was "moving out of state and will be back here on August 6 which is only two weeks later." June 25, 2012 Tr. p. 2. Because the reason for the State's request for a continuance was that there was evidence for the State, which—despite the State's best efforts—would not available on July 23, 2012, but would be available two weeks later, we conclude that the continuance of Scroggin's trial to a date approximately two weeks after the expiration of the seventy-day period described in Criminal Rule 4(B)(1) did not violate

Scroggin's right to a speedy trial. *See* Criminal Rule 4(D). As such, the trial court did not abuse its discretion in this regard.[1]

[20] Further, although Scroggin initially filed a *pro se* motion to discharge for failure to bring to trial within seventy days, the trial court need not have responded to Scroggin's motion because it was filed after Scroggin requested and was appointed counsel. We recently reaffirmed this position in *Black v. State*, 7 N.E.3d 333 (Ind. Ct. App. 2014). In *Black*, we concluded as follows:

> As our supreme court explained in [*Underwood v. State*, 722 N.E.2d 828 (Ind. 2000)], "once counsel was appointed, Defendant spoke to the court through counsel. The trial court was not required to respond to Defendant's request or objection. To require the trial court to respond to both Defendant and counsel would effectively create a hybrid representation to which Defendant is not entitled." *Underwood*, 722 N.E.2d at 832. Because Black's pro se request was made after counsel was appointed, the trial court was not required to respond to Black's early trial request. *See id*. Black has not established that he should have been released pursuant to Criminal Rule 4(B).

---

[1] To the extent that Scroggin relies on this court's opinions in *Schumann v. State*, 172 Ind. App. 383, 360 N.E.2d 277 (1977) and *Crosby v. State*, 597 N.E.2d 984 (Ind. Ct. App. 1992) in support of his claims, we observe that neither case considers whether a continuance was proper under Criminal Rule 4(D). In *Schumann*, this court affirmed the judgment of the trial court concluding that although the State's motion for a continuance did not conform to the mandates of Indiana Code section 35-1-26-2, which has subsequently been repealed, the defendant did not preserve the claimed error for appeal. 172 Ind. App. at 385, 360 N.E.2d at 278-79. In *Crosby*, the defendant's trial was not continued because the evidence that was unavailable to the State was a result of negligence by the State in failing to comply with discovery and its late addition and amendment of the charges. 597 N.E.2d at 988. As such, we conclude that Scroggin's reliance on these cases is misplaced.

7 N.E.3d at 338. Similarly, here, Scroggin's *pro se* motion to discharge was made after counsel was appointed. Scroggin requested the appointment of counsel during a July 2, 2012 pre-trial hearing.[2] Scroggin filed his *pro se* request for dismissal on July 3, 2012. In light of the Indiana Supreme Court's holding in *Underwood* and our holding in *Black*, the trial court was not required to respond to Scroggin's early trial request. Scroggin has not established that he should have been released pursuant to Criminal Rule 4(B)(1).

[21] Furthermore still, Scroggin appears to have subsequently acquiesced to the August 6, 2012 trial date. During trial, the following exchange took place:

> [Deputy Prosecutor]: We're set for trial presently [on] August 6th. I know counsel was hoping to address that today and he has some discussion for the court.
>
> [Defense Counsel]: Judge, I discussed it with my client. As you know, I was just appointed, but he wants to go ahead with that trial date.
>
> [The Court]: We can do that. Sure. Happy to.
>
> [Defense Counsel]: Okay. So we're just going to reaffirm the trial date.

---

[2] Scroggin's counsel filed his appearance on July 10, 2012. In *Black*, we explicitly agreed with Judge Friedlander's dissenting opinion in *Fletcher v. State*, 959 N.E.2d 922, 930 (Ind. Ct. App. 2012), in which Judge Friedlander indicated that he believed that *Underwood* and *Jenkins v. State*, 809 N.E.2d 361, 367 (Ind. Ct. App. 2004), *trans. denied*, did not indicate that the trial court need not respond to a defendant's pro-se motion once counsel has filed an appearance, but rather clearly stated that the trial court need not respond to a defendant's pro-se motion once counsel has been appointed. Because we agree with this court's conclusions in *Black* and with Judge Friedlander's reading of *Underwood* and *Jenkins*, we conclude that the relevant date for which the trial court need not respond to any pro-se motion filed by Scroggin is July 2, 2012, or the date that counsel was appointed to represent Scroggin.

[The Court]: That will be good. You've informed him of the trials and tribulations?

[Defense Counsel]: I've gone over all the penalties and given him my opinion and he knows it.

[The Court]: Let's hear you do it to him one more time.

[Defense Counsel]: You know that they filed a habitual against you? You understand that?

[Defendant]: Yes.

[Defense Counsel]: And counting all these different charges up by going to trial, if you lose you're looking at the potential of 11 years or more?

[Defendant]: Yes.

[Defense Counsel]: And my advice to you has been that you give me some time to try to either work this out or better prepare, and you've told me you do not want to do that. You want to go ahead with the trial?

[Defendant]: Yes.

[The Court]: Okay.

[Defense Counsel]: Thank you, Your Honor.

[The Court]: August 6th it is.

July 13, 2012 Tr. pp. 2-3. Because Scroggin indicated to the court that he accepted the August 6, 2012 trial date, Scroggin did not maintain a position consistent with his request for a trial earlier than August 6, 2012. As such, he may not now, on appeal, successfully assert that the trial court abused its discretion by failing to bring him to trial within the seventy-day period prescribed in Criminal Rule 4(B)(1).

# II. Ineffective Assistance of Counsel

[22] Scroggin also contends that he received ineffective assistance of trial counsel. The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

[23] A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

[24] Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams v. State*, 706 N.E.2d 149, 154 (Ind. 1999). Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

[25] In arguing that his trial counsel provided ineffective assistance, Scroggin claims that his counsel's performance was deficient because counsel failed to file a motion for discharge or address Scroggin's *pro se* motion for discharge. Again, in order to raise a successful claim of ineffective assistance of counsel, Scroggin had to prove that prejudice, *i.e.*, that but for counsel's alleged error, the result of the proceedings would have been different. Having concluded above that the trial court properly granted the State's motion for a continuance to a date outside of the original seventy-day period prescribed by Criminal Rule 4(B)(1) but within the additional time allowed by Criminal Rule 4(D), we conclude that Scroggin has failed to prove that he was prejudiced by his counsel's failure to file a motion for discharge or to address Scroggin's *pro se* motion for discharge.

# III. Sufficiency of the Evidence

[26] Scroggin also contends that the evidence is insufficient to sustain his conviction for Class C felony receiving auto parts.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

[27] In charging Scroggin with Class C felony receiving stolen auto parts, the State alleged:

> [T]hat [Scroggin] did on or about March 11, 2012, in the County of Porter, State of Indiana, knowingly or intentionally receive, retain or

dispose of a motor vehicle of Paul Rouhselange, to wit: 2001 white Ford mini van, which had been the subject of theft, and while having a prior conviction under this subsection or subsection (b), all of which is contrary to the form of the statute and against the peace and dignity of the State of Indiana.

Appellant's App. p. 22. The offense of receiving stolen auto parts is governed by Indiana Code 35-43-4-2.5, which, on the date in question, read as follows: "(c) A person who knowingly or intentionally receives, retains, or disposes of a motor vehicle or any part of a motor vehicle of another person that has been the subject of theft commits receiving stolen auto parts, a Class D felony." "However, the offense is a Class C felony if the person has a prior conviction of an offense under this subsection or subsection (b)."[3] Ind. Code § 35-43-4-2.5(c). Thus, in order to prove that Scroggin committed Class C felony receiving stolen auto parts, the State had to prove that: on or about March 11, 2012, Scroggin, knowingly or intentionally received, retained, or disposed of a white Ford minivan that belonged to Rouhselange, and that Scroggin had a prior conviction under either subsection (b) or (c) of Indiana Code section 35-43-4-2.5.

[28] At trial, the State presented evidence demonstrating that after stealing Rouhselange's white Ford minivan, Scroggin, knowing the minivan had been

[3] Subsection (b) provides that "[a] person who knowingly or intentionally exerts unauthorized control over the motor vehicle of another person, with the intent to deprive the owner of: (1) the vehicle's value or use; or (2) a component part … of the vehicle; commits auto theft." Ind. Code § 35-43-4-2.5(b).

the subject of a theft, retained possession of the van and drove it from the bar in Lake County to Porter County. Specifically, Scroggin took Rouhselange's vehicle from a bar in Lake County without permission to do so and retained possession of the van long enough to drive from Lake County to Porter County where he committed various criminal acts against V.M. and her family. After subjecting the minivan to front-end damage, Scroggin later disposed of the van in a parking lot near the bar in Lake County. In addition, at some point during the late evening or early morning in question, Scroggin called V.M. and told her that he was "in a stolen vehicle, I got money in my pocket, and I don't give … a f[***] about anything right now." Trial Tr. p. 296. This evidence is sufficient to support an inference that Scroggin committed Class C felony receiving stolen auto parts.

[29] Scroggin does not dispute that he has a prior conviction under either subsection (b) or (c) of Indiana Code section 35-43-4-2.5. Rather, in challenging the sufficiency of the evidence to sustain his receiving auto parts conviction, Scroggin argues that that the State was required to prove that he received the vehicle at issue after it was stolen by another, and that his conviction was based on circumstantial evidence alone. In *Gibson v. State*, 643 N.E.2d 885 (Ind. 1994), the Indiana Supreme Court, agreeing with the interpretation of this court, held that in order to prove a charge of receiving stolen property, the State is not required to prove the presence of a third-party thief because the "'statute does not require as an element of the offense any consideration of who may have actually stolen the property.'" 643 N.E.2d at 888 (quoting with approval

*Gibson v. State*, 622 N.E.2d 1050, 1054 (Ind. Ct. App. 1993)). As such, Scroggin's claim that the evidence is insufficient to prove his guilt because there was no evidence that Scroggin received the van after it was stolen by another must fail. In addition, the Indiana Supreme Court has held that a conviction may be based entirely on circumstantial evidence. *Franklin v. State*, 715 N.E.2d 1237, 1241 (Ind. 1999). "Circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *Id*. (citation omitted). As we stated above, the evidence presented by the State, whether direct or circumstantial, is sufficient to allow the jury to reasonably infer Scroggin's guilt. Scroggin's claim to the contrary is effectively an invitation to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

## IV.  Sentencing Issues

[30]    Scroggin also contends that the trial court abused its discretion in sentencing him to an aggregate term of nineteen-and-one-half years. Specifically, Scroggin claims that his criminal actions arose from a single episode of criminal conduct, and, as a result, his sentence should have been limited to no more than fourteen-and-one-half years, *i.e.*, ten years for his actual criminal acts enhanced by four-and-one-half years by virtue of his status as a habitual offender. Sloan also appears to claim that the trial court abused its discretion in ordering his individual sentences to run consecutive to one another.

[31] In general, a trial court cannot order consecutive sentences in the absence of express statutory authority. *Reed v. State*, 856 N.E.2d 1189, 1199 (Ind. 2006). "'A sentence that is contrary to or violative of a penalty mandated by statute is illegal in the sense that it is without statutory authorization.'" *Id.* (quoting *Rhodes v. State*, 698 N.E.2d 304, 307 (Ind. 1998)). "An appellate claim of sentencing error is subject to review for abuse of trial court discretion; reversal results 'only if there has been a manifest abuse of discretion.'" *Reynolds v. State*, 657 N.E.2d 438, 440 (Ind. Ct. App. 1995) (quoting *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993)). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007) (quotation omitted).

## A. Single Episode of Criminal Conduct

[32] Indiana Code section 35-50-1-2(c)(2) provides that except for statutory crimes of violence, "the total of the consecutive terms of imprisonment … to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." The term "'episode of criminal conduct' means offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b).

In determining whether multiple offenses constitute an episode of criminal conduct, the focus is on the timing of the offenses and the simultaneous and contemporaneous nature, if any, of the crimes." [*Reed*, 856 N.E.2d at 1200]. "[A]dditional guidance on the question" can be obtained by considering "whether 'the alleged conduct was so closely related in time, place, and circumstance that a complete account of one charge cannot be related without referring to the details of the other charge.'" *Id.* (quoting *O'Connell v. State*, 742 N.E.2d 943, 950-51 (Ind. 2001)).

*Williams v. State*, 891 N.E.2d 621, 631 (Ind. Ct. App. 2008). "Whether certain offenses constitute a 'single episode of criminal conduct' is a fact-intensive inquiry" to be determined by the trial court. *Schlichter v. State*, 779 N.E.2d 1155, 1157 (Ind. 2002).

[33] In claiming that all of his criminal acts were part of a single episode of criminal conduct, Scroggin argues that "[p]er the States [sic] theory all acts were performed in an effort to either entice or coerce [V.M.] to return to Scroggin's love and care." Appellant's Br. pp. 23-24. Again, Scroggin was convicted of the following crimes: (1) Class C felony receiving stolen auto parts, (2) Class A misdemeanor criminal mischief, (3) Class D felony arson, and (4) Class D felony intimidation. Most of Scroggin's crimes involved different victims. Each of the crimes also took place in different locations.

### 1. Class C Felony Receiving Stolen Auto Parts

[34] With respect to Scroggin's conviction for receiving stolen auto parts, the victim was an elderly gentleman named Paul Rouhselange, whom Scroggin had befriended earlier that evening. The crime was complete when Scroggin took

Rouhselange's van without permission and drove it away from the bar in New Chicago and into Porter County. A complete account of this offense can be related without reference to any of Scroggin's other criminal acts. We therefore conclude that the trial court did not abuse its discretion in determining that Scroggin's act of receiving stolen auto parts constituted a separate criminal episode from his other criminal actions.

[35] Furthermore, even if we were to believe Scroggin's claim that he only took and retained possession of Rouhselange's van for the purpose of committing his acts against V.M. and her family, we have previously held that "whether a series of crimes are related in some way is not the relevant test" for whether criminal actions were part of a single episode of criminal conduct. *See Reeves v. State*, 953 N.E.2d 665, 671 (Ind. Ct. App. 2011), *trans. denied*. As such, the mere fact that Scroggin's act of receiving stolen auto parts may have been in some way related to his other criminal acts does not, without more, indicate that his actions were all part of a single episode of criminal conduct.

## 2. Class A Misdemeanor Criminal Mischief

[36] With respect to Scroggin's conviction for criminal mischief, the victim was V.M.'s brother and the crime occurred outside of V.M.'s mother's residence. In committing the crime of criminal mischief, Scroggin drove to V.M.'s mother's residence and struck the driver's side of V.M.'s brother's vehicle. V.M.'s mother's residence was located miles away from either the bar in Lake County from which Scroggin took Rouhselange's van and V.M.'s residence. The facts relevant to provide that Scroggin committed the crime of criminal mischief

were separate and distinct from those relevant to prove that Scroggin committed his other criminal acts and a complete account of this offense can be related without reference to any of Scroggin's other criminal acts. Accordingly, we conclude that the trial court did not abuse its discretion in determining that Scroggin's act of committing criminal mischief constituted a separate criminal episode from his other criminal actions. Again, as we have stated above, the mere fact that Scroggin's act of receiving stolen auto parts may have been in some way related to his other criminal acts does not, without more, indicate that his actions were all part of a single episode of criminal conduct. *See id*.

### 3. Class D Felony Arson and Intimidation

[37] With respect to Scroggin's convictions for arson and intimidation, the State concedes that Scroggin's criminal acts "may have been one episode" of criminal conduct. Appellee's Br. p. 21. We agree. In both instances, the victim was V.M. In committing these crimes, Scroggin made numerous threatening phone calls and left numerous threatening messages on V.M.'s voice mail. Scroggin also set fire to the glove compartment of V.M.'s vehicle, which was parked outside of V.M.'s residence. Although Scroggin subsequently extinguished the fire, it was later determined that the vehicle was no longer drivable. V.M. indicated that in light of the intimidating phone calls that she had received from Scroggin, his act of arson made her even more afraid of him because she knew he was capable of carrying through on his levied threats. Although each crime can be proven without reference to the other, we conclude that Scroggin's acts

were so closely related in circumstance to warrant a single episode of criminal conduct.

[38] Having concluded that Scroggin's convictions for Class D felony arson and Class D felony intimidation constituted a single episode of criminal conduct, we observe that, with respect to these two offenses, the total consecutive term to which Scroggin may be sentenced "shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." Ind. Code § 35-50-1-2. As such, because the highest level felony for which Scroggin was convicted with respect to this single episode of criminal conduct was a D felony, his total consecutive term for these crimes may not exceed the advisory sentence for a Class C felony, which is four years. *See* Ind. Code § 35-50-2-6.

[39] Review of the record indicates that, with respect to these two crimes, the trial court sentenced Scroggin to an aggregate term of six years. Such a sentence amounts to an abuse of the trial court's discretion. Accordingly, we remand to the trial court with the instruction that the trial court impose an aggregate sentence for these two crimes that does not exceed four years.

## B. Consecutive Sentences

[40] Scroggin also appears to claim that the trial court abused its discretion in sentencing him because the trial court did not set forth its reasoning for imposing consecutive sentences for the separate episodes of criminal conduct. We disagree.

[41]    In sentencing Scroggin, the trial court set forth a number of aggravating and mitigating factors and determined that the aggravating factors "far outweigh[ed]" the mitigating factors. Sent. Tr. p. 30. Specifically, the trial court stated as follows:

> I had the opportunity to go over this presentence report back … when it was first filed. And I went through the whole thing and I thought to myself, my lord, what a history that is; what's appropriate in these circumstances? … But I looked through this thing and read it again here, twice, in fact, this past week. And what it kind of shows me is that out of the last nine years, you've been free and outside of prison for three, six of the last nine you've been in jail. They mentioned in their arguments that you had 21 arrests. Those 21 arrests resulted in … five felony convictions and eight misdemeanor convictions. Over the course of that period of time, you were granted deferred prosecution, you were granted probation, you were put in jail, you were put in prison, you were on parole, you had substance abuse treatment, you had anger management and you had work release, and you never successfully completed any of them. So I look at this, and I say, my lord, what is it that this Court, society, can do to help you to get you on the right track, and I've come to the conclusion that the answer is nothing. This has to come from within you…. And you're telling me at this point that it is. Well, maybe it is and maybe it isn't. One sentence in the presentence report stood out to me. And that is this sentence, "Scroggin is not viewed as suitable for life in a free society at this time." I have never ever heard that from a probation officer before, and I haven't really considered that. I've taken into account your history to include your younger times with the troubles that you went through during your childhood -- early childhood and your youth. And I find that the aggravating circumstances far outweigh any mitigating circumstances.

Sent. Tr. pp. 28-30. Contrary to Scroggin's assertion otherwise, this statement explains why the trial court imposed consecutive sentences when sentencing Scroggin. Scroggin's claim in this regard therefore is without merit.

# Conclusion

[42] In sum, we conclude that the trial court did not violate Scroggin's right to a speedy trial, that Scroggin did not receive ineffective assistance of trial counsel, and that the evidence is sufficient to sustain Scroggin's conviction for Class C felony receiving stolen auto parts. We also conclude that the trial court acted within its discretion in determining that Scroggin's acts relating to his Class C felony receiving stolen auto parts conviction and his Class A misdemeanor criminal mischief conviction were separate episodes of criminal conduct from one another. Scroggin's actions relating to these convictions were also separate episodes of criminal conduct from Scroggin's acts relating to his convictions for Class D felony arson and intimidation. However, because we conclude that Scroggin's convictions for Class D felony arson and intimidation were part of a single episode of criminal conduct, we further conclude that the trial court abused its discretion in imposing the six-year portion of Scroggin's aggregate nineteen-and-one-half-year sentence that related to these crimes. In reaching this conclusion observe that the maximum consecutive sentence available for these two crimes was four years, *i.e.*, the advisory sentence for a Class C felony. We therefore remand the matter to the trial court with the instruction to impose a sentence that is consistent with this memorandum decision.

[43] The judgment of the trial court is affirmed in part, reversed in part, and remanded to the trial court with instructions.

Najam, J., and Mathias, J., concur.